Filed 7/14/16  Zepeda v. Paramount Citrus Packing Co. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| VICTOR ZEPEDA et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>PARAMOUNT CITRUS PACKING COMPANY LLC et al.,<br><br>Defendants and Appellants. | F071593<br><br>(Super. Ct. No. CV282439)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  David R. Lampe, Judge.

Roll Law Group, Azadeh Allayee, J. P. Pecht, and Brooke S. Hammond for Defendants and Appellants.

The Downey Law Firm and Cory G. Lee for Plaintiffs and Respondents.

-ooOoo-

**INTRODUCTION**

This is an appeal from the denial of a motion to compel arbitration and request for stay of defendants Paramount Citrus LLC, Paramount Citrus II LLC, Paramount Citrus Holdings LLC, Paramount Citrus Packing Company LLC, Paramount Citrus Ventures

LLC, Paramount Citrus Cooperative, and Wonderful Brands Sales and Merchandising LLC (collectively, Paramount).

Paramount is a grower and processor of citrus crops in Kern County. The Randstad Corporation (Randstad) is in the business of providing temporary workers to its various client companies, including Paramount. Placement Pros is a division of Randstad. Randstad, through Placement Pros, assigned plaintiffs Victor Zepeda and Alejandra Villegas to perform work at Paramount's citrus packing facilities.

Prior to beginning their temporary work assignments at Paramount, plaintiffs executed contracts with Randstad, agreeing to arbitrate certain claims between them and "Randstad, its related companies, and/or their current or former employees" that may arise during their employment—including claims based on their wages and compensation. Plaintiffs sued Paramount, who are nonsignatories to the agreement, for unpaid wages and compensation. Paramount filed a motion to compel arbitration based on the agreement. The trial court denied the motion.

On appeal, Paramount contends the trial court erred in denying its motion to compel arbitration because (1) equitable estoppel precludes plaintiffs from using Paramount's nonsignatory status as a defense to enforcement of the agreement; and (2) Paramount is an intended third-party beneficiary of the agreement. We disagree and affirm the order.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs were assigned by Randstad to perform temporary work at Paramount. During the month of June 2013 and between November 2013 and April 2014, Zepeda was staffed as a temporary forklift driver at Paramount's Delano facilities. For a few days in April 2013 and November 2013, Villegas was staffed as a citrus grader/sorter with Paramount.

2.

*The Arbitration Agreement*

Both Zepeda and Villegas signed identical arbitration agreements with Randstad prior to beginning their temporary work assignments. The arbitration agreements state the following, in relevant part:

> "As consideration for accepting or continuing my employment with Randstad, Randstad and I agree to use binding arbitration, instead of going to court, for any 'covered claims' that arise between me and Randstad, its related companies, and/or their current or former employees. 'Covered claims' are any legal claims that relate to my recruitment, hire, employment, and/or termination including, but not limited to, those concerning wages or compensation, consumer reports, benefits, contracts, discrimination, harassment, retaliation, leaves of absence or accommodation for a disability.

> "I understand and agree that arbitration is the only forum for resolving covered claims, and that both Randstad and I are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration. I also agree that covered claims will only be arbitrated on an individual basis, and that both Randstad and I waive the right to participate in or receive money from any class, collective or representative proceeding. I may not bring a claim on behalf of other individuals, and any arbitrator hearing my claim may not combine more than one individual's claim or claims into a single case, or arbitrate any form of a class, collective or representative hearing. I understand and agree that any ruling by an arbitrator combining the covered claims of two or more employees or allowing class, collective or representative arbitration would be contrary to the intent of this agreement and would be subject to immediate judicial review."

*Other Agreements Signed by Plaintiffs*

In addition to the arbitration agreements, plaintiffs signed additional documents prior to beginning their work at Paramount:

(1) Both Zepeda and Villegas signed a Placement Pros document entitled "Safety Policies and Procedures," acknowledging they would comply with Placement Pros' safety rules as well as the safety rules of the client (Paramount).

(2) Villegas signed a "Notice to Employee," acknowledging that Randstad was a temporary staffing agency and that she would be paid $8.00 an hour to do work at Paramount.

(3) Villegas signed a "Receipt of Temporary Employee Safety Handbook," acknowledging she had received a copy of Paramount's employee handbook and she had read and agreed to all policies and procedures therein.

### Paramount's Motion to Compel Arbitration

On July 9, 2014, Zepeda filed his complaint against Paramount alleging class-wide violations of the California Labor Code, the California Industrial Welfare Commission wage orders, the Unfair Business Practices Act, and the Business and Professions Code. The alleged violations arose from activities occurring during his temporary work assignment. Neither Randstad nor Placement Pros are parties to the action.

Paramount workers are required to wear safety gear to prevent cross-contamination of the food manufactured at Paramount's facilities. Workers must put on and sanitize this safety gear at the beginning of every shift, and take off and dispose of the safety gear at the end of every shift. Zepeda alleged workers were not compensated for the time it takes to perform these activities, and they were not provided full 15- and 30-minute uninterrupted meal and rest break periods.

On October 7, 2014, the complaint was amended, adding a claim for conversion and naming Villegas as a representative party.

On November 17, 2014, Paramount filed a motion to compel arbitration and request for a stay. Paramount asserted it is entitled to enforce the arbitration agreements between plaintiffs and Randstad because it is a third-party beneficiary to the agreement, and additionally contends plaintiffs are equitably estopped from raising Paramount's nonsignatory status as a defense to compelled arbitration.

4.

On November 21, 2014, plaintiffs filed their second amended complaint, adding a claim to enforce the labor code through the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.).

On December 5, 2014, plaintiffs filed their opposition to Paramount's motion to compel arbitration and request for a stay.

On December 11, 2014, Paramount filed a reply.

On January 14, 2015, the trial court heard oral argument on Paramount's motion.

On March 20, 2015, the court issued a minute order denying the motion. The court denied Paramount's argument that it is a third-party beneficiary of the arbitration agreement, explaining "there is no express statement in the contract to benefit third-party entities and there is insufficient evidence that the parties intended to or impliedly agreed to apply the arbitration agreement set forth in the contract to the third-party beneficiaries." (Capitalization omitted.) The court made no remarks regarding the applicability of equitable estoppel.

On April 24, 2015, the trial court entered its final order denying Paramount's motion to compel arbitration and lifting the stay.

On this same day, Paramount filed a timely notice of appeal of the order.

## DISCUSSION

This appeal raises issues of law that are subject to de novo review. (See *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1212.) To the extent the trial court resolves factual disputes in denying arbitration, we review its determinations for substantial evidence. (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.) If there is no disputed extrinsic evidence, the court's determination is reviewed de novo. (*Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1511–1512.) Because the provisions of the relevant arbitration provisions are undisputed, we independently review the trial court's determination that Paramount is not entitled to enforce the arbitration agreements.

Public policy favors contractual arbitration as a means of resolving disputes. (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 342.)  However, """"[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and [generally,] a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration."""" (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co.*, *Inc.* (2005) 129 Cal.App.4th 759, 763.)

This rule is subject to limited exceptions.  Paramount contends two exceptions applicable here are equitable estoppel and the third-party beneficiary exception.  For the reasons set forth below, we reject Paramount's claims.

## I.    Equitable Estoppel

Under the doctrine of equitable estoppel, """""a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations."""" (*DMS Services LLC. v. Superior Court* (2012) 205 Cal.App.4th 1346, 1354.)  The purpose for this rule is simple:  it would be unfair to permit a party to rely on a contract to assert its claims, while simultaneously repudiating an agreement to arbitrate contained within that same contract.  (*Ibid*.)

The gravamen of plaintiffs' claims against Paramount relates to Paramount's failure to compensate its workers for time spent putting on and taking off mandatory safety gear.  Plaintiffs contend they were not compensated for the time required to put on, take off, and sanitize their safety gear, and performing this work activity also resulted in the interruption of their 30-minute meal periods.  They further assert that given the amount of time it takes to walk between rest areas and meal period punch clocks, they were denied full uninterrupted meal periods.  Additionally, they were denied two 30-minute meal periods when working shifts of 10 hours or longer.

6.

Contrary to Paramount's contentions, plaintiffs are not asserting claims "intimately founded in and intertwined" with any contractual obligations. (*DMS Services LLC. v. Superior Court*, *supra*, 205 Cal.App.4th at p. 1354.) Plaintiffs are not asserting any contractual causes of action at all—their claims are based solely on *statutory* violations of labor and employment laws.

Paramount relies on *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262 (*Boucher*), and asserts that statutory violations necessarily presume the existence of an underlying employment agreement. It contends "the California Supreme Court has recognized that, pursuant to the doctrine of equitable estoppel, a court may order arbitration of claims based on the California Labor Code and Section 17200 of California's Business and Professions Code." However, *Boucher* is distinguishable and does not support the conclusion Paramount contends it does.

In *Boucher*, the plaintiff entered into an employment contract with his employer for the position of senior vice-president and division president for a three-year term. (*Boucher*, *supra*, 127 Cal.App.4th at p. 265.) The employment agreement stated it could not be modified, waived, or discharged except in a writing signed by the plaintiff and the employer. (*Ibid*.) Shortly thereafter, the employer's operations were transferred to another entity, the nonsignatory defendant. (*Ibid*.)

The defendant refused to honor the plaintiff's contract with his original employer, and the plaintiff refused to enter into a new agreement with the nonsignatory defendant. (*Boucher*, *supra*, 127 Cal.App.4th at p. 265.) As a result, the plaintiff was terminated from his employment. (*Ibid*.) He sued both employers, alleging causes of action for nonpayment of wages, waiting time penalties, breach of the employment contract, breach of the covenant of good faith and fair dealing, and unfair business practices. (*Ibid.*) He sued the defendant alone for interference with contractual and prospective economic relations. (*Id.* at p. 266.) The employers filed a motion to compel the plaintiff to arbitrate his claims. (*Ibid*.)

7.

Because the plaintiff's claims in *Boucher* were based on an employment contract, which contained an arbitration clause, the appellate court held the plaintiff was equitably required to arbitrate his causes of action against the nonsignatory defendant. (*Boucher*, *supra*, 127 Cal.App.4th at p. 273.) The court reasoned "a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved." (*Id*. at p. 272.)

Here, unlike *Boucher*, plaintiffs are not using the terms or obligations of their agreements with Randstad as the basis of their claims against Paramount, while simultaneously refusing to arbitrate under those same contracts. None of plaintiffs' claims are based on violations of the terms of their agreements with Randstad. In fact, their claims do not rely on, presume the existence of, nor are they intertwined with any written contractual obligations.

Indeed, it is difficult to conceive of a wage and hour claim that plaintiffs could assert against Paramount based on the Randstad agreements. Randstad is responsible for hiring, paying, and assigning temporary workers to its clients. The client employer[1] is the entity directing the work activities to be performed. As a result, the client employer dictates how temporary workers earn wages and when they are entitled to take meal and rest periods. Randstad has no control over Paramount's policies in this regard.

Paramount contends *Lucas v. Hertz Corp*. (N.D.Cal. 2012) 875 F.Supp.2d 991 (*Lucas*) supports their argument that equitable estoppel applies. In *Lucas*, the District Court of the Northern District of California held the Hertz Corporation could compel arbitration of the plaintiff's claims against it on the basis of an arbitration clause

---

[1]Although we use the term "client employer" to describe Paramount, we emphasize the fact that there is no contractual employment relationship between Paramount and plaintiffs. In fact, the "Notice to Employee" signed by Villegas states the following: "Employment At Will: This document does not constitute a contract of employment. All employees are employees-at-will who may end their employment relationship with Randstad at any time and for any reason. Likewise, Randstad may end an employee's employment at any time, with or without cause." As can be seen, plaintiffs do not even have an employment contract with Randstad.

8.

contained in a car-rental contract between the plaintiff and Hertz's licensee, Costa Rica Rent a Car. Hertz was a nonsignatory to the agreement. (*Id*. at p. 995.) The plaintiff driver sued Hertz for strict liability and negligence, alleging Hertz placed a defective car into the stream of commerce and failed to keep the vehicle in a safe condition. (*Id*. at p. 997.)

The court held the plaintiff's claims made reference to or presumed the existence of an underlying car rental agreement. (*Lucas*, *supra*, 875 F.Supp.2d at p. 1003.) The court explained the plaintiff "would not have been able to rent the car—and thus would not have had any relationship with Hertz—without signing the rental agreement." (*Ibid*.)

The district court's decision in *Lucas* is nonbinding,[2] and we decline to follow its reasoning as persuasive authority. Here, while plaintiffs' wage and hour claims necessarily presume some type of employment relationship existed between plaintiffs and Paramount, their claims do not intimately rely on any of the terms of the Randstad agreements. As noted, their claims allege statutory employment violations against Paramount.

The Ninth Circuit Court of Appeals' decision in *Kramer v. Toyota Motor Corp*. (9th Cir. 2013) 705 F.3d 1122 illustrates this distinction. In *Kramer*, purchasers and lessees of Toyota vehicles brought a class action against the Toyota manufacturer, alleging the manufacturer violated California consumer statutes and breached warranties by allegedly including a defective braking system in the vehicles. (*Id*. at p. 1124.) Each

---

[2]Agreements relied on to compel arbitration that involve interstate commerce—which include most employment agreements (see *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105)—are governed by federal law. (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 219.) However, decisions of lower federal courts are nonbinding persuasive authority. (*Ibid*.) Moreover, our Supreme Court has held that "A litigant who was not a party to [an] arbitration agreement may invoke [arbitration under the Federal Arbitration Act] if the relevant *state* contract law allows him to enforce the agreement." (*Arthur Andersen LLP v. Carlisle* (2009) 556 U.S. 624, 632, italics added.)

class member signed a purchase agreement containing an arbitration clause with a Toyota dealer.  (*Id.* at pp. 1124–1125.)

Although the manufacturer was not a party or a signatory to the purchase agreements, it sought to enforce the arbitration agreements, arguing the plaintiffs were equitably estopped from asserting the manufacturer's nonsignatory status as a bar to compelling arbitration.  (*Kramer*, *supra*, 705 F.3d at pp. 1125-1126.)  The Ninth Circuit Court of Appeals, applying California law, held the equitable rule was inapplicable, reasoning the plaintiffs' claims against the manufacturer were not founded on any provision in the purchase agreements and, instead, arose based on the manufacturer's independent duties owed to the customers.  (*Id.* at pp. 1128–1134.)

The Ninth Circuit rejected the manufacturer's argument the plaintiffs' claims were necessarily intertwined with the purchase agreements because the lawsuit was predicated on the fact a vehicle purchase occurred.  (*Kramer*, *supra*, 705 F.3d at pp. 1131-1132.) The court explained that although the plaintiffs' causes of action presume a vehicle sale, the claims do not rely upon the existence of the purchase agreement and instead the causes of action arose under state laws or duties to the plaintiffs that were independent from the underlying purchase agreements.  (*Id.* at pp. 1130-1131.)

Here, as in *Kramer*, plaintiffs' claims against Paramount are not founded on any provision in the agreements they executed with Randstad.  Simply because their claims are predicated on the fact plaintiffs were assigned by Randstad to work at Paramount's facilities does not mean plaintiffs' claims rely upon any of the Randstad agreements to pursue their statutory rights.  Plaintiffs' complaint does not mention, reference, or refer to any of the Randstad agreements.  Thus, plaintiffs are not equitably estopped from avoiding arbitration.

## II.     Third-party Beneficiaries

Paramount also claims it is a third-party beneficiary to the arbitration agreements. "A contract, made expressly for the benefit of a third person, may be enforced by him." (Civ. Code, § 1559.)  The beneficiary need not be the sole or primary beneficiary (*Prouty v. Gores Technology Group* (2004) 121 Cal.App.4th 1225, 1233), nor does the contract need to identify or refer to the beneficiary by name (*Marina Tenants Assn. v. Deauville Marina Development Co*. (1986) 181 Cal.App.3d 122, 128).  However, the terms of the contract must evidence an intent by the parties to confer more than a mere incidental benefit to the third party.  (*Prouty*, at p. 1233.)  """"It must appear to have been the intention of *the parties* to secure to [the third party] personally the benefit of its provisions.""""  (*Ibid*.)

Neither the terms of the arbitration agreements nor the circumstances surrounding execution of the agreements evidence an intent to benefit Paramount.  The express language of the agreement states the following, in relevant part:  "Randstad and I agree to use binding arbitration, instead of going to court, for any 'covered claims' that arise between me and Randstad, its related companies, and/or their current or former employees" that "relate to my recruitment, hire, employment, and/or termination …." The language of the agreements evidence an intent to arbitrate claims between plaintiffs and Randstad, including its related companies and employees, and no one else.

Nonetheless, Paramount advances several arguments to support its claim it is a third-party beneficiary of the agreement.  First, Paramount contends it is a "related company" of Randstad.  There is, however, no evidence in the record to support this assertion.

Based on the context of the arbitration agreement, we presume Randstad's "related companies" include its affiliates, like Placement Pros, rather than its client employers. Under the "Procedure" section of the agreements, employees are encouraged to initially present concerns to a "Randstad HR manager."  To initiate arbitration, employees are

11.

directed to prepare a written demand and submit it to *Randstad's* general counsel, as well as the American Arbitration Association. However, there is no language in the agreement directing employees to file a claim with the client employer they perform work for. It would be absurd to require employees to file a claim with Randstad to initiate arbitration of a claim solely against the client employer.

Second, Paramount asserts an agreement to arbitrate wage and hour claims "would be virtually meaningless unless the parties believed and intended that the Arbitration Agreements apply to Randstad's third-party client companies where Plaintiffs would actually perform their work and earn their wages and compensation." Plainly, Randstad's arbitration agreement is not meaningless to the parties it was intended to protect. Randstad is responsible for hiring, paying, and assigning temporary employees to its clients' work projects. Conceivably, it is subject to litigation based on the performance of these responsibilities, and the arbitration agreement protects it from the possibility of protracted litigation.

Finally, Paramount argues other evidence supports the conclusion the arbitration agreement was intended to benefit it, including the other documents plaintiffs executed with Randstad and the fact Zepeda had previously been assigned to perform work for Paramount. Villegas signed a document acknowledging Randstad was a temporary staffing agency and she would be paid $8.00 an hour to do work at Paramount. She also signed a document acknowledging receipt of a copy of Paramount's employee handbook. Further, both Zepeda and Villegas signed a document acknowledging they read and understood Paramount's safety rules. While we agree these documents show plaintiffs were aware Randstad would assign them to Paramount, nothing in them evidences an intent to confer a benefit on Paramount. Thus, we conclude Paramount is not an intended third-party beneficiary of the arbitration agreements.

Paramount contends that allowing plaintiffs to avoid arbitration would thwart the strong policy favoring arbitration under state and federal law. The right to trial by jury in

12.

a civil case is a substantial right "'not lightly to be deemed waived.'" (*Young v. Horizon West*, *Inc*. (2013) 220 Cal.App.4th 1122, 1128.) "'Because the parties to an arbitration clause surrender this substantial right, the general policy favoring arbitration cannot replace an agreement to arbitrate.'" (*Ibid*.) In other words, not even the strong policy in favor of arbitration can manifest an agreement to arbitrate where one simply does not exist, and here, plaintiffs did not agree to arbitrate claims against Randstad's client employers.

## DISPOSITION

The judgment is affirmed. Plaintiffs are awarded costs on appeal.


_____
PEÑA, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
SMITH, J.