Filed 2/25/22  Ehrman v. Post CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| JOHN R. EHRMAN, | B306922 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV44336) |
| v. | |
| JASON POST, Individually and as Trustee, etc., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge.  Reversed and remanded with directions.

Manatt, Phelps & Phillips, Emil Petrossian and Benjamin B. Shatz for Defendants and Appellants.

Mayer Brown, Glenn K. Vanzura and Elisabeth M. Anderson for Plaintiff and Respondent.

Appellant Jason Post petitioned to compel arbitration of a lawsuit filed by respondent John Ehrman. The dispute concerns a web of businesses they used to invest in real property. The trial court denied the petition, finding that Post and entities related to him failed to prove the existence of an agreement to arbitrate.

Ehrman's complaint—including his claim for breach of an oral partnership agreement—is founded on written agreements underlying the parties' business. Appellants submitted excerpts from 61 of these written agreements requiring arbitration of all disputes, claims, or controversies arising from or relating to them.

Ehrman did not sign the written agreements but he claims to be a party to them or beneficiary of them. Because his lawsuit is based on agreements requiring arbitration of all disputes, Ehrman is equitably estopped from claiming he is exempt from arbitration. If the agreements have inconsistent arbitration provisions, the trial court should resolve the conflicts to achieve substantial justice. (Code Civ. Proc., § 1281.3.)[1] We reverse and remand the case with directions to order the parties to arbitrate their dispute. (§ 1281.2.)

## FACTS AND PROCEDURAL HISTORY
### *Allegations in Ehrman's Complaint*

Ehrman and Post began working together in 2007, purchasing, managing, and selling property. Under the terms of an alleged oral partnership, they secured capital for investment and shared profits, losses, and liabilities, forming dozens of limited liability companies (LLCs) and limited partnerships to

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

hold properties they acquired. Ehrman was a member, manager, or managing member of many of the LLCs. His position is memorialized in operating agreements and other documents.

Ehrman alleges that Post engaged in misconduct, including misappropriation of investor funds and defrauding investors by billing for construction work that was never performed. Ehrman admonished Post to stop his wrongful behavior. Instead, Post pushed Ehrman out of their business, excluded him from participation in management, sold assets without Ehrman's knowledge or approval, refused to provide Ehrman with business records, and failed to pay distributions.

Ehrman filed suit against Post, individually and as trustee of the Posovsky/Rakow Living Trust (Trust); Post Investment Group, LLC (PIGL); and Post Real Estate Group, Inc. (PREGI). Ehrman's amended complaint asserts 24 causes of action, including breach of an oral partnership agreement; breach of contract; breach of fiduciary duty; breach of the implied covenant of good faith and fair dealing; misrepresentation; interference with prospective economic advantage; declaratory relief; constructive trust; and an accounting.

### Petition To Compel Arbitration

Appellants petitioned to compel arbitration and stay the litigation. Post declared that Trust is sole owner of PIGL and PREGI. Each property the parties acquired is owned by or affiliated with four entities: a property holding LLC, a partners LLC, a managing member LLC, and a promoted interest participation (PIP) entity. The property holding LLC operating agreements and partners LLC agreements are governed by written agreements (Written Agreements) with arbitration

clauses.  Appellants submitted four exemplars of Written Agreements for their real estate business.

Post declared that Ehrman worked for PREGI from 2007 to 2018, eventually becoming chief investment officer.  Ehrman is party to partners LLC agreements for transactions in which he invested; managing member LLCs; and PIP agreements.  After Post refused Ehrman's proposal to become a partner in PIGL, Ehrman left to form his own company, then claimed he had an oral partnership with Post.

Post argued that the court must compel arbitration when the parties have a valid agreement to arbitrate.  He asserted that Ehrman is bound by arbitration clauses in the Written Agreements under the "single transaction" doctrine, or he is bound because he is a party to the agreements or a beneficiary of them.  Appellants did not attach to their petition a contract signed by all parties containing an arbitration clause.

### Ehrman's Opposition to Arbitration

Ehrman denied that his oral partnership agreement with Post has an arbitration provision.  He argued that appellants did not prove the existence of an agreement to arbitrate.  Of the four agreements offered in support of their petition, two have arbitration clauses and Ehrman did not sign them; Post (in his individual capacity), Trust, and PREGI did not sign the agreements submitted to the court.  No "single transaction" doctrine binds a party to unsigned contracts.

Ehrman argued that the Written Agreements have conflicting arbitration clauses.  Some require that disputes be submitted to JAMS and have a cost-shifting provision.  Others say that disputes are governed by American Arbitration Association (AAA) rules, with costs borne equally.

4

### Appellants' Reply

Appellants observed that Ehrman alleges he is a party to or intended beneficiary of the Written Agreements, which subjects him to the arbitration clauses in the agreements; he is foreclosed from "cherry-picking certain provisions of the Interrelated Agreements he finds advantageous while simultaneously disregarding provisions he dislikes." Ehrman entered multiple contracts that "constitute a single transaction and must be construed as a single agreement." He cannot rely on an alleged oral partnership agreement to invalidate his written agreement to arbitrate.

Post declared that Ehrman's complaint involves 38 real estate investments. Among these, 26 property holding LLC agreements contain mandatory arbitration agreements; 24 of the 26 agreements require arbitration before JAMS and two do not require arbitration in any particular venue. Appellants submitted 57 additional Written Agreements containing arbitration provisions.

### Ehrman's Surreply

The court allowed Ehrman to respond to appellants' newly submitted evidence. He argued that he signed one of the 61 agreements, which does not contain an arbitration clause. Three of the four defendants (Post, Trust, and PREGI) did not sign the 61 agreements. PIGL signed two of the 61 agreements, but neither contains an arbitration clause.

### Court Hearing and Ruling

At the hearing, appellants argued that Ehrman must arbitrate, even if he did not sign the "hundreds of agreements at issue in this case," because he is suing to enforce them or claims third party beneficiary status. He is estopped from denying that

5

he is bound by them.  Ehrman agreed that "we are suing for breach of all of the agreements."  However, he maintained that most of his claims do not involve breach of contract.

The court ruled that California laws governing arbitration apply, even if Delaware law plays a role in determining the merits of the lawsuit.  The court found that agreements submitted by appellants were either not signed by Ehrman or had no arbitration clause.  The trial court did not accept appellants' equitable estoppel theory and concluded that appellants "did not meet their burden to prove by a preponderance of the evidence that the parties entered into any agreement to arbitrate any of Plaintiff's claims."

## DISCUSSION

### 1.  Appeal and Review

State law strongly favors arbitration.  (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195.) On petition of a party, a court must order arbitration "if it determines that an agreement to arbitrate the controversy exists." (§ 1281.2.)  The denial of a petition to arbitrate is appealable.  (§ 1294, subd. (a).)

The parties agree that review is de novo because it requires legal analysis, not resolution of a factual dispute.  (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71.) Whether an arbitration agreement is binding on a nonsignatory is a question of law subject to de novo review.  (*Pillar Project AG v. Payward Ventures, Inc.* (2021) 64 Cal.App.5th 671, 675.) Doubts about arbitrability are " 'resolved in favor of coverage.' " (*AT&T Techs. Inc. v. Communs. Workers of America* (1986) 475 U.S. 643, 650; *Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 832.)

6

### 2. Pleading Allegations Are Relevant

Courts examine pleading allegations to determine if an arbitration clause applies to a dispute. (*Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418; *Rice v. Downs* (2016) 248 Cal.App.4th 175, 185 [court examines the agreement and the complaint filed by the plaintiff who refuses to arbitrate].)

A provision requiring arbitration of any controversy or dispute arising from or relating to an agreement covers tort claims if the underlying agreement embraces the dispute. (*Lewsadder v. Mitchum, Jones & Templeton, Inc.* (1973) 36 Cal.App.3d 255, 259; *Merrick v. Writers Guild of America, West, Inc.* (1982) 130 Cal.App.3d 212, 219. Cf. *Ahern v. Asset Management Consultants, Inc.* (Feb. 2, 2022, B309935) __ Cal.App.5th ___ [2022 Cal.App.LEXIS 80, *7] [tort claims are not "rooted in" an arbitration clause that narrowly covers " 'interpretation or enforcement of the provisions of this Agreement' "].) "The focus is on the nature of the claims asserted by the plaintiff . . . . That the claims are cast in tort rather than contract does not avoid the arbitration clause." (*Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 272 (*Boucher*); *Vianna v. Doctors' Management Co.* (1994) 27 Cal.App.4th 1186, 1189–1190 [arbitration clause covering "any dispute" encompassed claims rooted in the contractual relationship including wrongful termination in violation of public policy; breach of the covenant of good faith and fair dealing; infliction of emotional distress; and defamation]; *Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, 787 [plaintiff cannot avoid obligation to arbitrate claims arising out of his business relationship with defendant "by framing his claims as merely statutory"].)

7

### 3. Applicable Law

In footnote 5 of their opening brief, appellants argue that Delaware law governs the issue of arbitrability because the Written Agreements have Delaware choice-of-law provisions. Legal issues presented in footnotes are generally deemed inadequate. (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 419-420; *Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947.) Nonetheless, appellants raised the issue below and the trial court ruled on it.

California has a "strong policy . . . favoring the enforcement of freely negotiated choice-of-law clauses." (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 462 (*Nedlloyd*).) Appellants must show that Delaware "has a substantial relationship to the parties or their transaction" or identify another "reasonable basis for the parties' choice of law." (*Id.* at pp. 466–467 [Hong Kong law applied because corporate parties were domiciled there].) "If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California." (*Id.* at p. 466, fns. omitted.)

Appellants PIGL and PREGI are companies organized and existing under Delaware law, as Ehrman pleads in his complaint. A party's incorporation in the jurisdiction specified in a choice of law provision is a " 'substantial relationship' " and is " 'a reasonable basis' " for a contractual provision requiring application of that jurisdiction's law. (*Nedlloyd, supra,* 3 Cal.4th at p. 467.)

Ehrman is suing to enforce rights under dozens of LLCs existing under Delaware law. He signed the Post Big Oak MM,

8

LLC agreement, which contains a Delaware choice-of-law provision. He specifically alleges violations of agreements involving Post Annex and 16 other LLCs, in which he is a manager or managing member. Post Annex and other LLCs are Delaware entities. He claims Delaware law gives him the right to inspect each LLCs books and records. Given policies favoring choice-of-law provisions, we analyze Ehrman's lawsuit under California and Delaware law. As we shall see, both are congruent in this case.

### 4. Equitable Estoppel

Appellants contend that Ehrman is estopped from avoiding arbitration provisions in written contracts he is suing to enforce. Generally, "one must be a party to an arbitration agreement to be bound by it." (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc*. (2005) 129 Cal.App.4th 759, 763.) Ehrman signed *one* of the 61 documents appellants submitted in support of their petition: It does not contain an arbitration clause. Under the general rule, Ehrman would not be bound by contracts he did not sign.

Equitable estoppel is an exception to the general rule. Under that doctrine, "[b]y relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement." (*Boucher*, *supra*, 127 Cal.App.4th at p. 272.) Under Delaware law, a nonsignatory may be compelled to arbitrate under equitable estoppel and third-party beneficiary theories. (*NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC* (Del.Ch. 2007) 922 A.2d 417, 430–431.)

The purpose of the estoppel doctrine is "to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement." (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 221.) Estoppel applies if a plaintiff refuses to arbitrate but asserts claims that are " 'dependent upon, or inextricably intertwined with' " underlying contractual obligations of an agreement containing the arbitration clause. (*JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1239 (*JSM*).)

In *JSM*, *supra,* 193 Cal.App.4th 1222, the court applied equitable estoppel to a plaintiff who did not sign the arbitration agreement. "When a plaintiff brings a claim which *relies on contract terms* against a defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement. [Citations.] There is no reason why this doctrine should not be equally applicable to a nonsignatory plaintiff. When that plaintiff is suing on a contract—on the basis that, even though the plaintiff was not a party to the contract, the plaintiff is nonetheless entitled to recover for its breach, the plaintiff should be equitably estopped from repudiating the contract's arbitration clause. . . . [¶] Additionally, a nonsignatory can be compelled to arbitrate when it is suing as a third party beneficiary of the contract containing the arbitration clause [citation]; this too weighs in favor of enforcing the arbitration clause in this case." (*JSM,* at pp. 1239–1240; accord, *Am. Legacy Found. v. Lorillard Tobacco Co.* (Del.Ch. 2003) 831

10

A.2d 335, 349; *Westendorf v. Gateway 2000, Inc.* (Del.Ch. Mar. 16, 2000) [2000 Del.Ch. LEXIS 54, 2000 WL 307369].)[2]

It is disingenuous for Ehrman to claim his lawsuit is solely based on an oral partnership agreement. Nearly every page of his 48-page complaint cites written agreements through which the parties purchased, managed, and sold property. At the trial court hearing, Ehrman conceded he is "suing for breach of all of the [written] agreements." They are the foundation of his claims.

Ehrman's concession shows he considers himself a party to the Written Agreements or a beneficiary of them. The pleading claims Ehrman is a party to Written Agreements for affiliated LLCs, describing them as " 'tentacles' spreading off of the 'mothership' " of the oral partnership. The pleading diagrams the connections between affiliated LLCs created by the Written Agreements and Ehrman's role in them, referring to them as "the asset structure."

Ehrman pleads that he is entitled to a judicial declaration that he and Post are partners "and that the assets of the Partnership include . . . affiliated entities [and] assets owned by the affiliated entities." The affiliated entities are companies formed by the Written Agreements. In his brief, Ehrman states that the oral partnership used these entities to acquire and manage properties. He benefited financially from these entities until Post allegedly forced him out of the business and refused to pay distributions.

Though Ehrman emphasizes his failure to sign the Written Agreements, his complaint alleges he is a party to or "intended

---

[2] Unpublished cases are citable under Delaware rules. (Del. Super. Ct. Civ. Rules, rule 107(d)(4)(b).)

beneficiar[y] of, the written operating agreements of the Property Holding Companies." Appellants did not dispute that Ehrman is a party to or intended beneficiary of agreements in which he was a managing member or had an investment interest.

Ehrman's first cause of action for breach of oral partnership agreement incorporates by reference 53 prior allegations detailing his involvement with the LLCs and the rights this gives him. In a demand letter attached to his pleading, Ehrman sought books and records of "each and every Post Company," encompassing "any corporate entity, that owns or manages property" and listing 74 different entities. The demand relies on the Written Agreements, showing he has availed himself of rights they confer even if he did not sign them.

The assets in the alleged partnership between Post and Ehrman are held by various entities whose governing documents require parties and members to arbitrate disputes. The complaint asserts that Ehrman is a member of the entities. He alleges that appellants breached their fiduciary duties by wrongfully withholding distributions from numerous LLCs and PIPs, despite his membership in them.

Each cause of action is " ' "intimately founded in and intertwined" ' " with the underlying Written Agreements. (*JSM*, *supra*, 193 Cal.App.4th at p. 1237.) Even if Post (individually), Trust, and PREGI did not sign the agreements, "[a] nonsignatory plaintiff can be compelled to arbitrate a claim even against a nonsignatory defendant, when the claim is itself based on, or inextricably intertwined with, the contract containing the arbitration clause." (*Id.* at p. 1241.)

By suing appellants to secure rights and benefits under the Written Agreements—the lynchpin in his alleged oral

12

partnership with Post—Ehrman is equitably estopped from disavowing the arbitration clauses in those agreements. He claims to be a member, party, or beneficiary of them, even if he did not sign them. "The fundamental point is that a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate." (*Boucher*, *supra*, 127 Cal.App.4th at p. 272.) In sum, though Ehrman did not sign the agreements, he "may nonetheless be compelled to arbitrate when he seeks enforcement of other provisions of the same contract that benefit him." (*Metalclad v. Ventana Environmental Org. Corp. Partnership* (2003) 109 Cal.App.4th 1705, 1713.)

### 5. Conflicts in the Arbitration Clauses

The Written Agreements require that "any" dispute, claim or controversy "arising out of or relating to this Agreement" be submitted to final and binding arbitration before a single arbitrator. Ehrman contends that the clauses are unenforceable because they conflict. Some require that disputes be submitted to JAMS and allow the arbitrator to allocate all or part of the cost of arbitration (arbitrator and attorney fees) to the prevailing party. Some refer to the AAA and require the cost of the arbitrator's fee to be equally shared but allow the arbitrator to award attorney fees to the prevailing party.

An agreement to arbitrate remains valid even where there are "multiple alternative methods for appointing an arbitrator." (*HM DG, Inc. v. Amini* (2013) 219 Cal.App.4th 1100, 1108.) If the parties cannot agree on a method, section 1281.6 "provides a solution to ensure a party's contractual right to arbitrate is enforced," by allowing the court to appoint the arbitrator. (*HM DG, Inc.,* at p. 1108.) In *HM DG,* the court rejected the claim of the party opposing arbitration, who argued that there

13

was no " 'meeting of the minds' " or mutual consent to arbitrate because there were options for selecting an arbitrator and location. (*Id.* at pp. 1108–1109.) The lack of a specified forum or set of rules does not invalidate the agreement to arbitrate; the parties may choose to agree on a forum, rules, and arbitrator, or have the court decide for them among alternatives so long as the arbitration clause clearly evidences the parties' intent to submit their disputes to binding arbitration. (*Id.* at pp. 1110–1111.)

If arbitration arises from alleged violations of multiple agreements containing arbitration clauses, the court may order the proceedings consolidated if the disputes "arise from the same transactions or series of related transactions" and there are common issues of fact or law creating the possibility of conflicting arbitration rulings. (§ 1281.3.) "In the event that the arbitration agreements in consolidated proceedings contain inconsistent provisions, the court shall resolve such conflicts and determine the rights and duties of the various parties to achieve substantial justice under all the circumstances." (*Ibid.*) This statutory provision furthers policies favoring efficient settling of private disputes, judicial economy, and avoidance of conflicting results. (*Garden Grove Community Church v. Pittsburgh-Des Moines Steel Co.* (1983) 140 Cal.App.3d 251, 262.)

## DISPOSITION

The order denying appellants' petition for arbitration is reversed. The case is remanded with directions to stay respondent's lawsuit and order the parties to arbitrate their dispute. Respondent to bear all costs on appeal.

NOT TO BE PUBLISHED.


                                        LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.


15