[No. B176545. Second Dist., Div. Five. Mar. 2, 2005.]

CRAIG BOUCHER, Plaintiff and Respondent, v.
ALLIANCE TITLE COMPANY, INC., Defendant and Appellant.

264

COUNSEL

Pillsbury Winthrop, Roberta S. Hayashi, Daphne P. Bishop and Kevin Fong for Defendant and Appellant.

Elliott R. Speiser & Associates, Elliott R. Speiser; Matthew Norton & Associates and John M. Norton for Plaintiff and Respondent.

OPINION

**TURNER, P. J.—**

## I. INTRODUCTION

Defendant, Alliance Title Company, Inc., appeals from an order denying its petition to compel arbitration. Defendant sought to compel plaintiff, Craig Boucher, to arbitrate his claims pursuant to the arbitration clause of an employment agreement. The employment agreement was between plaintiff and a codefendant, Financial Title Company (Financial). Stated differently, defendant, a nonsignatory to the arbitration agreement, sought to compel plaintiff, a signatory, to arbitrate his claims against it. We hold plaintiff is equitably required to arbitrate his causes of action against defendant. Accordingly, we reverse the order denying defendant's petition to compel arbitration.

## II. BACKGROUND

### A. *The Complaint*

Plaintiff sued both defendant and Financial. The substantive allegations of plaintiff's complaint are that he entered into a written employment agreement with Financial on June 5, 2003. Plaintiff was to be employed as senior vice-president and division president for a three-year term. He was entitled to specified incentive compensation. The employment agreement could not be modified, waived, or discharged except in a writing signed by plaintiff and Financial. In January 2004, Financial's president, Bruce Maita, spoke to plaintiff. Mr. Maita said that all of Financial's Southern California operations or assets were being transferred to defendant. Plaintiff alleges Financial is "a wholly separate and distinct corporate entity." In addition, plaintiff was notified he would no longer be working for Financial nor would he still be the senior vice-president and division president; instead, he would be working for defendant. The complaint alleges, "Plaintiff [was instructed] that he was obligated to allow unilateral modifications by [defendant] to the Employment Agreement, including but not limited to, a modified and lesser Incentive Compensation Package." Defendant refused to honor plaintiff's contract with Financial. Plaintiff refused to enter into a new agreement with defendant. Thereafter, plaintiff was terminated.

Plaintiff alleges causes of action against both defendant and Financial for: nonpayment of wages in violation of Labor Code section 201; waiting time penalties under Labor Code section 203; breach of the employment contract; breach of the covenant of good faith and fair dealing; and unfair business practices in violation of Business and Professions Code section 17200 et seq.

Plaintiff asserts two causes of action against defendant alone. Those causes of action are for interference with contractual and prospective economic relations. Plaintiff alleges defendant intentionally or negligently disrupted the performance of his employment contract by, among other things: demanding he disclose confidential information; refusing to provide him with necessary staff and offices; refusing to "honor" his sales; demanding he reject his contract with Financial; demanding he enter into a new contract with defendant; and unilaterally terminating his relationship with Financial. Plaintiff further alleges defendant repeatedly directed him to breach the June 5, 2003, employment agreement and constructively terminated him without cause.

### B. *The Petition to Compel Arbitration*

Defendant and Financial filed a petition to compel arbitration under the United States Arbitration Act. (9 U.S.C., § 1 et seq.) The arbitration clause in the June 5, 2003, employment agreement between plaintiff and Financial states: "Any dispute or controversy arising under or in connection with this Agreement shall be submitted to binding arbitration in Sacramento County, California, in accordance with the rules of the American Arbitration Association then in effect, and any award entered in such arbitration may be reduced to judgment in any court of competent jurisdiction." Defendant presented evidence that Mercury Companies, Inc. (Mercury) is the sole shareholder of Financial. Further, Mercury is the majority shareholder of defendant. Also, in mid-2003, Financial transferred all assets of its Los Angeles branch, at which plaintiff was employed, to defendant. Plaintiff opposed the petition. He argued the United States Arbitration Act did not apply. Plaintiff further argued defendant, a nonsignatory to the employment contract, could not compel arbitration under the January 5, 2003, agreement. The trial court found the United States Arbitration Act was applicable. The trial court granted the petition as to Financial, but denied it as to defendant. The court reasoned that the fundamental point of the federal decisional authority was that a plaintiff should not be allowed to circumvent an arbitration clause by naming a nonsignatory as a party; plaintiff had *not* done so in the present case; plaintiff had an employment agreement with Financial, but found himself employed by defendant.

## III. DISCUSSION

### A. *Standard of Review*

Defendant contends the trial court's order denying its petition to compel arbitration is subject to de novo review. Plaintiff argues that because extrinsic evidence was presented and considered, we must review the trial

court's decision for substantial evidence. Plaintiff does not contend, and we do not find, that there was any *conflicting* evidence before the trial court. Absent conflicting evidence, we review the matter de novo. (*Metalclad Corp. v. Ventana Environment Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1715–1716 [1 Cal.Rptr.3d 328] (*Metalclad*); *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71–72 [100 Cal.Rptr.2d 683].)

### B. *Defendant Is Equitably Entitled to Compel Plaintiff to Arbitrate*

In the trial court, plaintiff argued the United States Arbitration Act did not apply. Plaintiff has not raised that issue on appeal. Instead, plaintiff apparently agrees with defendant that, as the trial court found, the United States Arbitration Act governs the duty to arbitrate question. Any issue that could have been raised as to the applicability of the United States Arbitration Act to this case has been waived or forfeited. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317] [argument asserted in the trial court but not raised on appeal is waived]; *Johnston v. Board of Supervisors* (1947) 31 Cal.2d 66, 70 [187 P.2d 686], disapproved on another point in *Bailey v. County of Los Angeles* (1956) 46 Cal.2d 132, 139 [293 P.2d 449] [same].)

It is undisputed that an arbitration agreement exists between plaintiff and Financial. Defendant contends the circumstances of this case obligate plaintiff to arbitrate his claims against it as well. There is a strong federal policy in favor of arbitration agreements. (*Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 25 [114 L.Ed.2d 26, 111 S.Ct. 1647]; *Saint Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 [8 Cal.Rptr.3d 517, 82 P.3d 727].) Questions of arbitrability are to be addressed with regard to that policy. (*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24 [74 L.Ed.2d 765, 103 S.Ct. 927]; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 96 [99 Cal.Rptr.2d 745, 6 P.3d 669].) Notwithstanding that strong policy, the United States Supreme Court has held, " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " (*AT&T Technologies, Inc. v. Communications Workers of America* (1986) 475 U.S. 643, 648 [89 L.Ed.2d 648, 106 S.Ct. 1415]; accord, *United Steelworkers of America v. Warrior & Gulf Nav. Co.* (1960) 363 U.S. 574, 582 [4 L.Ed.2d 1409, 80 S.Ct. 1347].) Here, there is no written agreement signed by defendant and plaintiff in which they agreed to arbitrate any disputes. Defendant is not a signatory to the June 5, 2003, employment agreement containing the arbitration clause. Only plaintiff and Financial signed that employment agreement. Plaintiff alleges defendant rejected and refused to honor the June 5, 2003, employment

contract. Therefore, no written agreement to arbitrate exists between plaintiff and defendant. In addition, there is evidence Financial transferred all of the assets of its Los Angeles operation to defendant. There is no evidence defendant did not remain a separate entity from Financial. The evidence showed the two corporations shared a parent corporation. Mercury owned all of Financial's stock. Further, Mercury, the parent corporation, owned the majority of defendant's stock.

■ The question presented, then, is whether defendant, a nonsignatory to the June 5, 2003, employment agreement, can rely on it to compel plaintiff to arbitrate his claims. Under the United States Arbitration Act, that question is answered not by state law, but by the federal substantive law of arbitrability. (*International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH* (4th Cir. 2000) 206 F.3d 411, 417, fn. 4 (*International Paper*); *Metalclad, supra,* 109 Cal.App.4th at pp. 1712–1713.) The United States Supreme Court has not ruled on the issue before us. ■ In the absence of controlling United States Supreme Court decisional authority, we make an independent determination of federal law. (*People v. Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129]; *Rohr Aircraft Corp. v. County of San Diego* (1959) 51 Cal.2d 759, 764 [336 P.2d 521], revd. on other grounds (1960) 362 U.S. 628, 636 [4 L.Ed.2d 1002, 80 S.Ct. 1050].) Decisions of the lower federal courts are persuasive, but are not binding. (*People v. Camacho* (2000) 23 Cal.4th 824, 837 [98 Cal.Rptr.2d 232, 3 P.3d 878]; *Etcheverry v. Tri-Ag Service, Inc.* (2000) 22 Cal.4th 316, 320–321 [93 Cal.Rptr.2d 36, 993 P.2d 366].)

The federal courts have identified five theories pursuant to which an arbitration clause can be enforced by or against a nonsignatory. (E.g., *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.* (3d Cir. 1999) 181 F.3d 435, 445–446; *Thomson-CSF, S.A. v. American Arbitration Assn.* (2d Cir. 1995) 64 F.3d 773, 776.) These are "limited exceptions" to the general rule under the United States Arbitration Act that arbitration is a contractual right available only to signatories to the agreement. (*MS Dealer Service Corp. v. Franklin* (11th Cir. 1999) 177 F.3d 942, 947 (*MS Dealer*); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.* (11th Cir. 1993) 10 F.3d 753, 757 (*Sunkist*).) The five theories are, as described by the Second Circuit Court of Appeals: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." (*Thomson-CSF, S.A. v. American Arbitration Assn., supra,* 64 F.3d at p. 776; see also *MS Dealer, supra,* 177 F.3d at p. 947 [agency and related principles; third party beneficiary].) Here, defendant relies only on equitable estoppel principles.

The application of equitable estoppel principles to arbitrability questions arises in a variety of circumstances. For example, as the Court of Appeals for

the Fourth Circuit has held: "[A] party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him. . . . [¶] A nonsignatory is estopped from refusing to comply with an arbitration clause 'when it receives a "direct benefit" from a contract containing an arbitration clause.' [Citations.]" (*International Paper, supra,* 206 F.3d at p. 418.) In *International Paper,* a defendant signatory sought to compel a plaintiff nonsignatory to arbitrate. The court held the plaintiff, who sought a direct benefit from the contract, could not refuse to comply with the arbitration clause. (*Id.* at p. 418.) Equitable estoppel principles are also applicable under these circumstances: a plaintiff has an arbitration agreement with a subsidiary corporation; the plaintiff sues the parent corporation; and the plaintiff's claims against the parent company are based on the same facts and are inherently inseparable. In that circumstance, the Fourth Circuit has held that the parent corporation may enforce the arbitration agreement. (E.g., *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile* (4th Cir. 1988) 863 F.2d 315, 320–321; see *Metalclad, supra,* 109 Cal.App.4th at p. 1713.)

As pertinent here, the federal Courts of Appeals have repeatedly held that under equitable estoppel principles and in appropriate factual circumstances, a signatory to a agreement containing an arbitration clause may be compelled to arbitrate its claims against a nonsignatory when the relevant causes of action rely on and presume the existence of the contract. (E.g., *Choctaw Generation Ltd. v. American Home Assur.* (2d Cir. 2001) 271 F.3d 403, 406–408 (*Choctaw*); *Grigson v. Creative Artists Agency* (5th Cir. 2000) 210 F.3d 524, 527–531 (*Grigson*); *MS Dealer, supra,* 177 F.3d at pp. 946–948; *Sunkist, supra,* 10 F.3d at pp. 756–757; *Hughes Masonry v. Greater Clark County School Bldg.* (7th Cir. 1981) 659 F.2d 836, 838 (*Hughes*); see also *Sam Reisfeld & Son Import Company v. S.A. Eteco* (5th Cir. 1976) 530 F.2d 679, 681.) As the Eleventh Circuit Court of Appeals has held: "[E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory. [Citation.]" (*MS Dealer, supra,* 177 F.3d at p. 947; see *Sunkist, supra,* 10 F.3d at pp. 757–758.)

In *Hughes, supra,* 659 F.2d at pages 838–841, the Court of Appeals for the Seventh Circuit considered a situation where a masonry company entered into a contract containing an arbitration clause with a general construction manager. But the contract also outlined the responsibilities of a third party, a project construction manager. The masonry company subsequently filed an action against the project construction manager. The masonry company argued it could not be required to arbitrate its claims against the project construction manager. The masonry company argued the project construction manager was not a party to the agreement containing the arbitration clause.

The Court of Appeals disagreed. It held the masonry company was equitably estopped from avoiding the arbitration clause. The Court of Appeals reasoned that the masonry company relied on the contract to prove the project construction manager had breached the obligations assigned to it in that agreement. (*Ibid.*)

In *Sunkist, supra,* 10 F.3d at pages 756–758, a nonsignatory defendant, Del Monte, sought to compel the plaintiff, Sunkist Growers, Inc. (Sunkist), to arbitrate pursuant to a license agreement with Sunkist Soft Drinks (SSD). Del Monte had acquired all of the stock of SSD. The complaint alleged Del Monte had interfered with a contract, a license agreement, between Sunkist and SSD. (*Id.* at p. 755.) The Court of Appeals for the Eleventh Circuit found each of Sunkist's causes of action against Del Monte made reference to the contract and each claim presumed the existence of the agreement. (*Id.* at p. 758.) In addition, there was an "integral relationship" between SSD and Del Monte. Del Monte had acquired ownership of SSD. Further SSD became a soft drink division of Del Monte. (*Ibid.*) The Court of Appeals concluded: "The nexus between Sunkist's claims and the license agreement, as well as the integral relationship between SSD and Del Monte, leads us to the conclusion that the claims are 'intimately founded in and intertwined with' the license agreement. Therefore, we hold that Sunkist is equitably estopped from avoiding arbitration of its claims." (*Ibid.*)

In *MS Dealer,* the Court of Appeals for the Eleventh Circuit held: "Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory. *Sunkist Soft Drinks,* 10 F.3d at 757. When each of a signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement, the signatory's claims 'arise[] out of and relate[] directly to the [written] agreement,' and arbitration is appropriate. *Id.* at 758." (*MS Dealer, supra,* 177 F.3d at p. 947.) In *MS Dealer,* the Court of Appeals found each cause of action against the nonsignatory defendant referred to and presumed the existence of the contract containing the arbitration clause.

In *Grigson, supra,* 210 F.3d at page 527, the Court of Appeals for the Fifth Circuit adopted the "intertwined-claims test" formulated by the Eleventh Circuit in *Sunkist* and *MS Dealer.* Two signatories to and a third party beneficiary of a movie distribution contract containing an arbitration clause brought the *Grigson* action. The defendants were two nonsignatories, an actor and an agent. The plaintiffs alleged the defendants had tortiously interfered with the main distribution agreement. (*Id.* at pp. 525–526.) The Court of

Appeals found the plaintiffs were equitably estopped to avoid arbitration with the defendants. This was because the claims against the defendants were intertwined with and dependent upon the film distribution agreement. (*Id.* at pp. 527–531.)

In *Choctaw, supra,* 271 F.3d at page 406, the Court of Appeals for the Second Circuit held that, in deciding whether a nonsignatory could invoke an arbitration clause: "[Federal courts have] looked to the relationships of persons, wrongs and issues, in particular whether the claims that the nonsignatory sought to arbitrate were ' " 'intimately founded in and intertwined with the underlying contract obligations.' " '[Citations.]" The Second Circuit held: " '[T]he circuits have been willing to estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.' [Citation.]" (*Ibid.*) The Second Circuit panel found a "tight relatedness of the parties, contracts and controversies" in that resolution of the dispute between the signatory and the nonsignatory turned on various provisions of the contract containing the arbitration clause. (*Ibid.*)

The California Court of Appeal applied the foregoing federal decisional authority in a case arising under the United States Arbitration Act in *Metalclad, supra,* 109 Cal.App.4th at pages 1716–1717. Our colleagues in Division Three of the Court of Appeal for the Fourth Appellate District held in part: "Under the [United States Arbitration Act], applying the doctrine of equitable estoppel as a matter of ' "federal substantive law of arbitrability" ' [citation], federal precedent unanimously holds that, '[a]lthough arbitration is a contractual right that is generally predicated on an express decision to waive the right to trial in a judicial forum, . . . the lack of a written arbitration agreement is not an impediment to arbitration.' (See, e.g., *Sunkist* [] [, *supra,*] 10 F.3d [at pp.] 756–757 . . . .)" (*Metalclad, supra,* 109 Cal.App.4th at p. 1712.) *Metalclad* involved a nonsignatory defendant, a parent corporation. It was alleged the parent corporation caused the signatory codefendant, a subsidiary, to breach the underlying contract. The Court of Appeal held the nonsignatory defendant, the parent corporation, could compel the signatory plaintiff to arbitrate the claims in the complaint. (*Id.* at p. 1717.) The Court of Appeal concluded the plaintiff's tort claims were " 'intimately founded in and intertwined with' " the underlying contract and ordered arbitration. (*Ibid.*)

To summarize, under both federal and California decisional authority, a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are "intimately founded in and intertwined" with the underlying contract obligations. (*McBro Planning & Development Co. v. Triangle Elec. Constr. Co., Inc.* (11th Cir. 1984) 741 F.2d 342, 344; accord, *Sunkist, supra,*

10 F.3d at p. 758.) By relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement. (*Sunkist, supra,* 10 F.3d at pp. 757–758; *Hughes, supra,* 659 F.2d at pp. 840–841.) The focus is on the nature of the claims asserted by the plaintiff against the nonsignatory defendant. (*Sunkist, supra,* 10 F.3d at pp. 757–758; see *Metalclad, supra,* 109 Cal.App.4th at p. 1717.) That the claims are cast in tort rather than contract does not avoid the arbitration clause. (*Sunkist, supra,* 10 F.3d at p. 758.) Moreover, the federal decisional authority is not limited, as plaintiff suggests, to cases in which a contract with a subsidiary corporation is relied upon to compel arbitration with a parent entity. The fundamental point is that a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved. (*Metalclad, supra,* 109 Cal.App.4th at p. 1714; *NORCAL Mut. Ins. Co. v. Newton, supra,* 84 Cal.App.4th at p. 84.)

■ Plaintiff's claims against defendant rely on, make reference to, and presume the existence of the June 5, 2003, employment agreement with Financial. In his first four of six causes of action, plaintiff alleges: defendant failed to pay him accrued wages, including incentive compensation, due under the terms of the June 5, 2003, employment agreement and the Labor Code; defendant's failure to pay plaintiff accrued wages and incentive compensation due under the June 5, 2003, employment agreement entitled him to penalties under the Labor Code; defendant breached the June 5, 2003, employment contract causing plaintiff damages in the form of lost earnings and other employment benefits due under that agreement; defendant breached the covenant of good faith and fair dealing implied in the June 5, 2003, employment agreement; and the failure to pay wages due, requiring plaintiff to reject the June 5, 2003, employment contract, and asking plaintiff to disclose confidential information in violation of that contract, amounted to unlawful, unfair, or fraudulent business acts. Each of the foregoing causes of action is brought against *both* defendant and Financial. Each of the foregoing claims makes reference to and relies on the June 5, 2003, employment agreement. In addition, plaintiff alleges defendant intentionally or negligently disrupted plaintiff's performance of the June 5, 2003, employment agreement. Further, plaintiff claims that defendant, by breaching the June 5, 2003, contract, intentionally interfered with his prospective economically advantageous relationships with clients. These claims all make reference to and presume the existence of the validity of the June 5, 2003, employment contract. In addition, Financial and defendant were both owned, at least in majority part, by the same entity, Mercury. Under these circumstances, plaintiff's claims against defendant are intimately founded in and intertwined

with the June 5, 2003, employment agreement; therefore, he is equitably estopped from avoiding arbitration of his causes of action against defendant.

## IV. DISPOSITION

The order denying the petition to compel arbitration of defendant, Alliance Title Company, Inc., is reversed. The trial court is directed, upon issuance of the remittitur, to enter a new order granting defendant's petition to compel arbitration. Defendant is to recover its costs on appeal from plaintiff, Craig Boucher.

Mosk, J., and Kriegler, J.,[*] concurred.

A petition for a rehearing was denied March 22, 2005, and respondent's petition for review by the Supreme Court was denied June 22, 2005.

---

[*]Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6, of the California Constitution.