Filed 12/3/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| EDGAR GONZALEZ, | B328959 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 22STCV17370) |
| v. | |
| NOWHERE BEVERLY HILLS LLC et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stuart M. Rice, Judge. Reversed.

De Castro Law Group, José-Manuel A. de Castro for Defendants and Appellants.

Bibiyan Law Group, David D. Bibiyan and Henry G. Glitz for Plaintiff and Respondent.

_____

Nine related LLCs—Nowhere Beverly Hills, Nowhere Calabasas, Nowhere Culver City, Nowhere Commissary, Nowhere Palisades, Nowhere Partners, Nowhere Silver Lake, Nowhere Venice and Nowhere Holdco—appeal from an order denying their motion to compel plaintiff Edgar Gonzalez to arbitrate his claims against them on a non-class basis pursuant to a written arbitration agreement between Gonzalez and a tenth related LLC, Nowhere Santa Monica.  Gonzalez opposed the motion on the ground the non-Santa Monica Nowhere entities were not parties to the agreement.  We hold Gonzalez is equitably estopped from avoiding arbitration with the non-Santa Monica Nowhere entities.  We therefore reverse the order denying their motion.

## BACKGROUND

### A.    Arbitration Agreement

Nowhere Santa Monica and eight other Nowhere LLCs operate nine organic grocery stores and cafes known as *Erewhon* in the Los Angeles area.  A tenth LLC, Nowhere Holdco, is their managing member.

Gonzalez worked for Nowhere Santa Monica at its Erewhon market for approximately five months.

As a condition of employment, Gonzalez entered into an individual (i.e., non-class) arbitration agreement with Nowhere Santa Monica which provided that any dispute "between Nowhere Santa Monica, LLC DBA Erewhon-Santa Monica" and Gonzalez relating to his employment would be submitted to arbitration, including any claims for "compensation, wages, claims alleging failure to compensate for all hours worked, failure to pay overtime, failure to pay minimum wage, failure to reimburse expenses, failure to pay wages upon termination,

2

failure to provide accurate and itemized wage statements, failure to provide meal and/or rest breaks, entitlement to waiting time penalties and/or other claims involving employee wages, [or] benefits."

## B.    Complaint

On May 25, 2022, Gonzalez filed suit against the ten Nowhere entities, defining as "Defendants" those ten entities plus "any of their parent, subsidiary, or affiliated companies."  He alleged that he and the putative class members "were employees or former employees of Defendants covered by" the Labor Code and applicable Industrial Welfare Commission Wage Orders. Gonzalez alleged the ten Nowhere entities "employed [him] and similarly situated employees within the State of California."

Gonzalez further alleged that "each of the [d]efendants was the agent, principal, employee, employer, representative, joint venture or co-conspirator of each of the other [d]efendants," who "authorized, ordered, . . . directed" and ratified the conduct of each other defendant, and "there exists a unity of interest and ownership between defendants such that their individuality and separateness have ceased to exist."  "As a result of the aforementioned facts," Gonzalez alleged, defendants "are joint employers."

In ten causes of action, which we will detail below, Gonzalez alleged defendants violated the Labor Code by failing to pay minimum and overtime wages; provide meal or rest periods; provide timely wages and accurate wage statements; indemnify employees for expenses; or pay for vested vacation time on termination of employment.  These violations, Gonzalez alleged, constituted unfair business practices.

Gonzalez sought damages, restitution, waiting time penalties, and injunctive relief.

The complaint, a 20-page block of unbroken, nondescript boilerplate, mentioned no employment agreement, described no work performed or control exerted over such work, and made no distinction between any of the ten defendants.

## C.    Court Proceedings

The ten Nowhere entities filed a joint motion to compel Gonzalez to arbitrate his claims on an individual, non-class basis and to dismiss his class allegations.

In support of the motion, Tom Wong, Nowhere Holdco's Chief Financial Officer, declared that each Erewhon market had its own management team that supervised its own employees. Wong declared that Gonzalez worked for Nowhere Santa Monica at the Erewhon market in Santa Monica from May 27, 2021 to October 15, 2021, and never worked at any other Erewhon market or was employed by any defendant other than Nowhere Santa Monica.

Michael Holmes, the Vice President of Human Resources for Modern HR, Inc., to which Nowhere outsourced its human resources services, declared that becoming a new hire for Nowhere involved accessing an online onboarding process in which the prospective employee was required to review a number of documents and policies and acknowledge understanding of and agreement to the policies.  Holmes declared that Gonzalez used this onboarding process to agree to an arbitration agreement between himself and Nowhere Santa Monica.  He declared that Modern HR had no record of Gonzalez entering into an employment agreement with any non-Santa Monica Nowhere entity.

4

In opposition to the motion, Gonzalez offered no affirmative evidence other than his counsel's declaration that no discovery had yet been completed. He objected to two paragraphs of Wong's declaration on the grounds that they lacked foundation and presented improper legal conclusions, but the trial court overruled the objections.

Gonzalez admitted that he entered into an arbitration agreement with Nowhere Santa Monica and conceded that the agreement compelled arbitration as to that entity, but argued the remaining defendants failed to establish the agreement applied to them because they offered no evidence that equitable estoppel should apply.

The trial court found no evidence that Gonzalez was "attempting to enforce any benefit as to the [non-Santa Monica] Defendants while refusing to arbitrate with them," and thus no evidence demonstrating that his "claims against the nonsignatory Defendants were 'intimately founded in and intertwined with' Plaintiff's arbitrable claims against Nowhere Santa Monica." The court therefore granted the motion to compel individual arbitration as to Nowhere Santa Monica but denied it as to the other Nowhere entities.

Gonzalez thereafter dismissed his complaint against Nowhere Santa Monica.

The other Nowhere entities appeal.

## DISCUSSION

It is undisputed that an arbitration agreement exists between Gonzalez and Nowhere Santa Monica. The non-Santa Monica entities admit they are nonsignatories to this agreement, but contend they may enforce it under principles of equitable estoppel because Gonzalez's (and the class's) claims against all Nowhere entities depend on and are intertwined with Nowhere

5

Santa Monica's obligations under the employment agreement with Gonzalez. We agree.

## A. Governing Law

### 1. Equitable Estoppel

"Because arbitration is a matter of contract, the basic rule is that one must be a party to an arbitration agreement to be bound by it or invoke it—with limited exceptions." (*Soltero v. Precise Distribution, Inc*. (2024) 102 Cal.App.5th 887, 892-893 (*Soltero*).)

One exception is the doctrine of equitable estoppel, which as a general matter precludes a party from asserting rights it otherwise would have had against another when its own conduct renders assertion of those rights inequitable. (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 220 (*Goldman*).) In the arbitration context, "[I]f a plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement. In other words, a signatory to an agreement with an arbitration clause cannot . . . 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.' " (*Ibid*.)

"[T]he *sine qua non* for application of equitable estoppel as the basis for allowing a nonsignatory to enforce an arbitration clause is that the claims the plaintiff asserts against the nonsignatory must be dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause."

6

(*Goldman*, *supra*, 173 Cal.App.4th at pp. 217-218; see also *Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 20 (*Jones*) ["The doctrine focuses on the 'nature of the claims asserted by the plaintiff against the nonsignatory defendant.' [Citation.] 'Claims that rely upon, make reference to, or are intertwined with claims under the subject contract are arbitrable' "].) "This requirement comports with, and indeed derives from, the very purposes of the doctrine: to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement." (*Goldman*, at p. 221.)

In *Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705 (*Metalclad*), the plaintiff Metalclad had a written stock purchase agreement, which included an arbitration clause, with Geologic de Mexico, S.A. de C.V. (Geologic), a subsidiary of defendant Ventana Global Limited (Ventana). (*Id.* at pp. 1709-1710.) Metalclad sued Ventana, Geologic and others for breach of contract, fraud and other claims, and later dropped Geologic from the suit. (*Id.* at p. 1710.) Ventana successfully compelled arbitration under Geologic's contract with Metalclad, even though not a signatory. (*Id.* at pp. 1717-1719.) The court based its decision on the "nexus" between Metalclad's claims against Ventana and the underlying contract between with Geologic, "as well as the integral relationship between Geologic and Ventana" as subsidiary and parent. (*Id.* at pp. 1717-1718.) " 'The fundamental point,' " the court held, " 'is that [a party may not] make use of [a] [contract containing an arbitration clause] as long as it worked to her advantage, then attempt to avoid [the duty to

7

arbitrate by] defining the forum in which [the] dispute . . . should be resolved.' " (*Id.* at p. 1714.)

In *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262 (*Boucher*), the plaintiff entered into a written employment agreement with Financial Title Company (Financial).  The agreement contained an arbitration clause.  After Financial informed the plaintiff that its operations and assets were being transferred to Alliance Title Company (Alliance) and he would "no longer be working for Financial," the plaintiff sued both entities for breach of the employment agreement and failure to pay wages.  (*Id.* at p. 265.)  The trial court granted Financial's motion to compel arbitration but denied Alliance's motion.  (*Id.* at p. 266.)

The Court of Appeal reversed, explaining that " 'equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory.' " (*Boucher*, *supra*, 127 Cal.App.4th at p. 269.)  The court held that the plaintiff's claims against Alliance "rely on, make reference to, and presume the existence of" the employment agreement with Financial.  (*Id.* at p. 272.)  Indeed, the court held, the plaintiff alleged Alliance "failed to pay him accrued wages . . . due under the terms of the . . . employment agreement" with Financial, breached the employment agreement, "causing plaintiff damages in the form of lost earnings and other employment benefits due under that agreement," required him to reject the employment agreement, and asked him to disclose confidential information in violation of the agreement.  (*Ibid.*)  Given these allegations, the court concluded the "plaintiff's claims against [Alliance] are intimately founded in and

8

intertwined with [the employment agreement with Financial]." (*Id*. at pp. 272-273.)

In *Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782 (*Garcia*), another employment case, the plaintiff Garcia signed an employment agreement with Real Time Staffing Services, a temporary staffing agency that hires and places temporary workers at businesses in California. As part of its hiring process, Real Time obligated Garcia to enter into an arbitration agreement. Real Time assigned Garcia to work as a temporary employee for Pexco, which was not a party to either agreement. After Garcia was terminated, he filed a class action suit against both Real Time and Pexco for Labor Code violations and unfair business practices pertaining to payment of wages. Real Time and Pexco moved to compel arbitration. The court granted the motion, holding as to the nonsignatory Pexco that Garcia was equitably estopped from denying the arbitration agreement. (*Id*. at pp. 784-785.)

In affirming the trial court's equitable estoppel ruling, our colleagues in Division Three of the Fourth District rejected Garcia's argument that the nonsignatory Pexco could not compel arbitration because Garcia asserted only statutory claims under the Labor Code, and did not seek to enforce the contractual terms of his employment agreement. (*Garcia*, *supra*, 11 Cal.App.5th at pp. 786-787.) Relying on *Boucher*, the *Garcia* court reasoned that because "Garcia alleges Pexco and Real Time were his joint employers," and "[b]ecause the arbitration agreement controls Garcia's employment, he is equitably estopped from refusing to arbitrate his claims with Pexco." (*Id*. at p. 788.)

In *Soltero*, our colleagues in Division One of the Fourth District came to the opposite conclusion on essentially identical

9

facts. There, Real Time entered into an arbitration agreement with the plaintiff Soltero, whom it placed on a temporary work assignment with Precise Distribution, Inc. (Precise), a nonsignatory to the agreement. Soltero filed a class action complaint against Precise for its alleged failure to provide required meal periods and rest breaks to employees, failure to pay premiums for meal and rest break violations, and related claims for inaccurate wage statements and failure to immediately pay all wages due upon separation of employment. Soltero asserted these claims under identified provisions of the Labor Code, the Industrial Welfare Commission's wage orders, and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.), and did not name Real Time as a defendant. The complaint did not mention any of the terms of Soltero's employment agreement with Real Time. (*Soltero*, *supra*, 102 Cal.App.5th at p. 891.)

Precise filed a motion to compel arbitration under the agreement between Soltero and Real Time, arguing that even as a nonsignatory to the agreement, it was entitled to enforce the agreement based on a theory of equitable estoppel. The trial court denied the motion. (*Soltero*, *supra*, 102 Cal.App.5th at pp. 891-892.)

*Soltero* affirmed. The court held that because Soltero sued Precise only for violations of the Labor Code, in a complaint that did "not mention or rely on any provision of her employment agreement with Real Time as a basis for imposing liability on Precise," her complaint against Precise was not " 'founded in and inextricably bound up with the obligations imposed by the agreement containing the arbitration clause.' " (*Soltero*, *supra*, 102 Cal.App.5th at p. 893, italics omitted.)

10

*Soltero* declined to follow *Garcia*'s equitable estoppel holding because, *Soltero* reasoned, *Garcia* failed to explain how Garcia's Labor Code claims against his assigned employer actually relied on the substantive terms of his employment agreement with the temporary agency. (*Soltero, supra*, 102 Cal.App.5th at p. 896.)

### 2. Standard of Review

The party petitioning to compel arbitration " 'bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. [Citation.] In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination.' " (*Giuliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276, 1284.)

Because the material facts are undisputed, we review de novo whether the trial court correctly denied Nowhere's motion to compel arbitration. (*Soltero, supra*, 102 Cal.App.5th 887; *Ford Motor Warranty Cases* (2023) 89 Cal.App.5th 1324, 1331.)

### B. Application

Applying these principles, we conclude the trial court incorrectly denied the non-Santa Monica entities' motion to compel arbitration because all of Gonzalez's claims against them are intimately founded in and intertwined with the employment agreement with Nowhere Santa Monica, an agreement which contains an arbitration provision.

11

### 1. Gonzalez's First and Second Causes of Action are Founded in and Intertwined with the Employment Agreement

In his first and second causes of action, Gonzalez alleges defendants are liable under Labor Code sections 510, 1197 and 1194 for unpaid overtime and minimum wages.[1]

Section 510 describes the rate of overtime pay "for an employee." (§ 510, subd. (a).) Section 1197 describes the minimum wage "for employees." Section 1194 states that any "employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation." (§ 1194, subd. (a).) "[S]ection 1194 provides an employee with a private statutory right to recover unpaid prevailing wages from an employer . . . ." (*Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.* (2002) 102 Cal.App.4th 765, 779.)

Gonzalez's first and second causes of action therefore require that defendants be his employers, which Gonzalez alleges they were.

To "employ" a person "means to engage, suffer, or permit [the person] to work." (Cal. Code Regs., tit. 8, § 11140(2)(C).) An "employer" is "any person . . . who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." (Cal. Code Regs., tit. 8, § 11140(2)(F).)

Here, Tom Wong, Nowhere Holdco's Chief Financial Officer, and Michael Holmes, the Nowhere entities' Human

---

[1] Undesignated statutory references are to the Labor Code.

12

Resources manager, declared that only Nowhere Santa Monica employed Gonzalez; none of the non-Santa Monica Nowhere entities did so. Gonzalez offered no evidence, and does not allege or claim that any other defendant did so. Therefore, it is undisputed that only Nowhere Santa Monica employed Gonzalez.

The only possible basis for Gonzalez's Labor Code claims against the non-Santa Monica entities is his theory that they were *joint* employers.

A joint employer is a person who, "by exercising significant control over the employees of another, may come to *share the employer's legal obligations*." (*Martinez v. Combs* (2010) 49 Cal.4th 35, 50, italics added; see also *Mejia v. Roussos Construction, Inc.* (2022) 76 Cal.App.5th 811, 820.)

Accordingly, the liability of the non-Santa Monica entities as joint employers derives solely from their share in Nowhere Santa Monica's legal obligations. Those obligations derive, in turn, solely from the employment agreement. Therefore, Gonzalez's joint employment theory inextricably intertwines his Labor Code claims with the employment agreement.

### 2. The Remaining Causes of Action are likewise Founded in and Intertwined with the Employment Agreement

In his third cause of action, Gonzalez alleges defendants are liable under sections 512 and 226.7 and applicable wage orders for failing to provide meal breaks and rest periods.

In his fifth cause of action, Gonzalez alleges defendants are liable under sections 201, 202 and 203 for failing to pay all wages earned prior to termination or resignation.

In his sixth cause of action, Gonzalez alleges defendants are liable under section 226 and applicable wage orders for failing to provide accurate wage statements.

In his seventh cause of action, Gonzalez alleges defendants are liable under sections 204 and 210 for failing to pay wages in a timely fashion.

In his eighth cause of action, Gonzalez alleges defendants are liable under section 2802 for failing to indemnify employees for necessary job expenses.

In his ninth cause of action, Gonzalez alleges defendants are liable under section 227.3 for failing to pay for vested vacation time upon termination of employment.

In his tenth cause of action, Gonzalez alleges defendants' conduct constitutes an unfair business practice within the meaning of Business and Professions Code section 17200.

Each of these causes of action depends on the non-Santa Monica entities' status as joint employers. Each thus derives from and depends on their share in Nowhere Santa Monica's legal obligations, which derive solely from the employment agreement.

### 3. Equity Compels Arbitration

Gonzalez's claims against the non-Santa Monica joint employers all depend on and are founded in and inextricably intertwined with the employment agreement between Gonzalez and Nowhere Santa Monica. That agreement contains an arbitration provision. Because Gonzalez agreed to arbitrate his wage and hour claims against Nowhere Santa Monica, and because his theory of liability against the non-Santa Monica entities is that they exercised significant control over Nowhere Santa Monica's employees so as to share its legal obligations, he

is equitably estopped from raising the non-Santa Monica entities' nonsignatory status to oppose arbitrating his wage and hour claims against them.

In other words, it would be unfair for Gonzalez to group the non-Santa Monica entities with Nowhere Santa Monica for purposes of wage and hour liability as joint employers while at the same time denying the joint relationship in order to avoid arbitration. (See *Garcia*, *supra*, 11 Cal.App.5th at pp. 787-788.)

### 4. *Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539

Gonzalez argues this case is governed by *Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539 (*Jarboe*), which held that alleged joint employers could not compel arbitration pursuant to an agreement between the employee and his direct employer.

In that wage and hour class action, the plaintiff Jarboe sought to group several automobile dealerships into a joint employer relationship. The plaintiff was party to an arbitration agreement with only one of the dealerships, for which he worked for approximately one month before being transferred to a different dealership with which there was no arbitration agreement. He was directly employed by only these two dealerships, one of which was party to an arbitration agreement and one of which was not. (*Jarboe*, *supra*, 53 Cal.App.5th at pp. 545-546.)

After surveying *Metalclad*, *Boucher*, and *Garcia*, our colleagues in the First District concluded that the plaintiff's treatment of all defendants as a single enterprise (by asserting all of the causes of action except for one against all defendants without distinction), and his allegation that the defendants were "joint employers," did not support defendants' equitable estoppel

15

claim. (*Jarboe*, *supra*, 53 Cal.App.5th at p. 554.) The court did not explain its reasoning, other than to observe that the defendants had "not admitted that they are 'joint employer[s]' nor have they provided any evidence that shows a joint employment relationship with [the plaintiff]." (*Ibid.*)

"In contrast to the proven close relationships between the signatories and the nonsignatories in *Metalclad*, *Boucher*, and *Garcia*," the *Jarboe* court held, "the precise nature of the relationship between [the signatory and nonsignatory dealerships] is unproven in this record. While the record shows that the [nonsignatory dealerships] are subject to 'common ownership,' there is no evidence showing the relationship among the separate corporate entities or how they operated with respect to each other's employees. Nothing indicates that being hired by [a signatory dealership] meant that Jarboe concurrently worked for all the other dealerships. Rather, the record suggests that each dealership maintained separate relationships with that dealership's employees." (*Jarboe*, *supra*, 53 Cal.App.5th at p. 554.)

We respectfully disagree, for three reasons. First, an equitable estoppel analysis focuses not on the relationships of the parties but the interrelatedness of the plaintiff's claims and any obligations arising from an agreement containing an arbitration provision. (*Jones*, *supra*, 195 Cal.App.4th at p. 20 ["The doctrine focuses on the 'nature of the claims asserted by the plaintiff against the nonsignatory defendant' "]; *Boucher*, *supra*, 127 Cal.App.4th at p. 272 ["The focus is on the nature of the claims asserted by the plaintiff against the nonsignatory defendant"]; *Metalclad*, *supra*, 109 Cal.App.4th at p. 1713 [we look " 'to the relationships of persons, wrongs and issues, [and] in particular

16

whether the claims [are] " ' "intimately founded in and intertwined with the underlying contract obligations" ' " ' "]; *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.* (11th Cir. 1993) 10 F.3d 753, 757 ["the focus of our inquiry should be on the nature of the underlying claims asserted"].)

Although *Metalclad* and other courts analyze the relationships between parties, they do so not because the relationships matter in themselves but because they inform whether the plaintiff's claims are intertwined with any underlying contractual obligations. In our case, for example, at this stage, the non-Santa Monica defendants' alleged status as joint employers is important because a joint employer shares the direct employer's legal obligations, and thus claims against a joint employer are intertwined with the direct employer's obligations.

Second, *Jarboe* erred in requiring that a defendant moving to compel arbitration admit or prove a joint employment relationship with the plaintiff. It is the plaintiff's burden, not the defendant's, to prove joint employment. Reversing this burden puts the defendant in an inequitable bind—admit a contested issue or eschew arbitration.

Third, the issue at this stage is not whether joint employment actually exists but in what forum that issue should be decided. For present purposes it is enough that Gonzalez *claims* joint employment while simultaneously avoiding arbitration of claims based on the same facts as and inherently inseparable from arbitrable claims against his direct employer. (See *Metalclad, supra,* 109 Cal.App.4th at p. 1713.) In short, equitable estoppel prevents Gonzalez from simultaneously claiming defendants are joint employers with Nowhere Santa

17

Monica for purposes of liability but strangers to the employment agreement for purposes of trial.

### 5. *Soltero*

For similar reasons, in the disagreement between *Soltero* and *Garcia* over whether claims against a joint employer are so intertwined with the employer's contractual obligations as to estop the employee from avoiding arbitration, we side with *Garcia*.

As discussed above, in *Soltero*, the plaintiff and Real Time, a staffing agency, entered into an arbitration agreement which contained an arbitration clause. The plaintiff then brought Labor Code claims against Precise, the agency's nonsignatory client, on a joint employment theory. *Soltero* held in part that because Soltero sued Precise only for violations of the Labor Code, in a complaint that did "not mention or rely on any provision of her employment agreement with Real Time as a basis for imposing liability on Precise," her complaint against Precise was not " 'founded in and inextricably bound up with the obligations imposed by the agreement containing the arbitration clause.' " (*Soltero*, *supra*, 102 Cal.App.5th at p. 893, italics omitted.)

We preliminarily observe that several courts have used the word "rely" as shorthand for the standard that equitable estoppel applies where the plaintiff's claims against a nonsignatory must be "dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause." (*Goldman*, *supra*, 173 Cal.App.4th at pp. 217-218.) Although some courts have held that " '[c]laims that rely upon, make reference to, or are intertwined with claims under the subject contract are arbitrable' " (*Jones*, *supra*, 195 Cal.App.4th at p. 20), we should

18

be careful to avoid supplanting the standard with a shorthand derived from one of the standard's elements.

We should take further care not to inflate the shorthand into a whole new requirement, for example that a complaint must expressly reference an agreement for the plaintiff's claims to be intertwined with the underlying contractual obligations. Although some courts have observed that a complaint's reference to an employment agreement suggests the plaintiff's claims and the underlying contractual obligations are intertwined, none makes express mention of the underlying agreement the sine qua non of equitable estoppel.

For example, in *Metalclad*, although the plaintiff sued for breach of contract and other claims, the court based its decision not on whether the complaint expressly referenced the contract but on the "nexus" between Metalclad's claims and the underlying contract. " 'The fundamental point,' " the court held, " 'is that [a party may not] *make use of* [a] [contract containing an arbitration clause] as long as it worked to her advantage, then attempt to avoid [the duty to arbitrate by] defining the forum in which [the] dispute . . . should be resolved.' " (*Metalclad, supra*, 109 Cal.App.4th at p. 1714, italics added.) The court did not hold that a plaintiff must expressly reference a contract to "make use" of it.

Similarly, in *Boucher*, the plaintiff sued a signatory and nonsignatory for breach of an employment agreement and failure to pay wages. The complaint relied on and referred to the existence of the employment agreement. (*Boucher, supra*, 127 Cal.App.4th at p. 272.) Although the appellate court held that " 'equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must *rely* on the

19

terms of the written agreement in asserting [its] claims" against the nonsignatory' " (*id*. at p. 269, italics added), the court did not hold that the complaint must expressly reference the agreement. On the contrary, the court held that even had the plaintiff's claims been cast solely in tort, equitable estoppel would apply. (*Id*. at p. 272.)

To the extent *Soltero* holds that equitable estoppel did not apply because the plaintiff's complaint made no mention of the underlying employment agreement, we believe it erred.  To apply equitable estoppel only when a complaint expressly references the agreement containing an arbitration clause would either limit application of the doctrine to contractual claims or invite tort and statutory claimants to craft complaints to avoid any mention of the agreement, as happened in this case.  No authority or principle supports either the limitation or encouragement of misleading artful pleading.  (See *Boucher*, *supra*, 127 Cal.App.4th at p. 272 [that claims are cast in tort rather than contract does not avoid an arbitration clause].)

To the extent *Soltero* declined to follow *Garcia*'s equitable estoppel holding because, as *Soltero* reasoned, *Garcia* failed to explain how the plaintiff's Labor Code claims against his assigned employer actually relied on the substantive terms of his employment agreement with the temporary agency (*Soltero*, *supra*, 102 Cal.App.5th at p. 896), we believe it again erred.  As we explain above, claims against a joint employer are intertwined with the substantive terms of an agreement with the direct employer because a joint employer's obligations flow from those of

20

the direct employer. As noted in our Background, *ante*, Gonzalez has alleged identical claims against the Nowhere defendants.[2]

---

[2] In disagreeing with *Garcia*, *Soltero* stated that "several federal district courts have questioned whether [*Garcia*] correctly applied California's equitable estoppel doctrine. (See, e.g., *Soto v. O.C. Communications, Inc.* (N.D.Cal., Nov. 21, 2018, No. 17-cv-00251-VC), 2018 U.S.Dist. LEXIS 199011, p. *2 & fn. 1 ['*Garcia*'s interpretation of the equitable estoppel exception may be inconsistent with traditional notions of equitable estoppel and other California Court of Appeal cases']; *Shoals v. Owens & Minor Distrib., Inc.* (E.D.Cal., Oct. 31, 2018, No. 2:18-cv-2355 WBS EFB) 2018 U.S.Dist. LEXIS 186729, pp. *21-*23 [characterizing *Garcia* as 'an outlier decision' on equitable estoppel that 'appears to be contrary to established law and has not been adopted by the California Supreme Court' and 'is inconsistent with the purpose of the doctrine'].)" (*Soltero*, *supra*, 102 Cal.App.5th at p. 895.)

*Soltero* further observed that "In *Franklin v. Community Regional Medical Center* (9th Cir. 2021) 998 F.3d 867 (*Franklin*), the Ninth Circuit acknowledged that 'some federal district courts have disagreed with *Garcia*'s result' (*id*. at p. 874, fn. 9), but concluded that absent any indication the California Supreme Court would reject *Garcia*, it would follow *Garcia's* interpretation of California law as a matter of comity and federalism (*id*. at pp. 871-874)." (*Soltero*, *supra*, 102 Cal.App.5th at p. 895, fn. 3.)

We believe these to be unfair characterizations. *Two* district courts stated that Garcia "may" or "appears to be" contrary to California law, but neither gave any explanation for such a statement. On the contrary, *Franklin* stated that *Garcia* "is *not* an 'outlier' case," and "simply applies a rule that we have (necessarily) long recognized—that equitable estoppel applies to claims 'intimately founded in and intertwined with' an underlying contract—to different facts." (*Franklin*, *supra*, 998 F.3d at p. 874, italics added.)

### 6. *Hernandez v. Meridian Management Services, LLC* (2023) 87 Cal.App.5th 1214

Gonzalez relies on *Hernandez v. Meridian Management Services, LLC* (2023) 87 Cal.App.5th 1214 (*Hernandez*) for the proposition that equitable estoppel does not apply where the plaintiff sues only a nonsignatory to the arbitration agreement, not a signatory. *Hernandez* is distinguishable.

In that case, an employee brought suit against a group of entities that had employed her, with the exception of the entity that had directly hired her and with whom she had signed an arbitration agreement. She alleged that because the nonsignatory defendants shared facilities and management with the signatory employer, they were the signatory's joint employers. (*Hernandez*, *supra*, 87 Cal.App.5th at p. 1217.) The nonsignatory defendants moved to compel arbitration on the basis of equitable estoppel.

The trial court denied the motion, stating " ' "the linchpin of the estoppel doctrine is fairness." . . . [The nonsignatories] complain[] that it is unfair for [the plaintiff] to tailor her complaint in such a way as to avoid arbitration. But it isn't, really. There is nothing wrong with either party wanting to appear in court, or in arbitration. And it isn't as though [the plaintiff] is trying to have it both ways—to appear in court, she has completely given up her claims against [the signatory]. Parties make tactical "bargains" like this all the time.' " (*Hernandez*, *supra*, 87 Cal.App.5th at p. 1219.)

In affirming the lower court's order, the appellate court held that the nonsignatories' "opening brief never explains . . . what unfairness they suffer from the trial court ruling," and the nonsignatories "give us no basis for disturbing the trial court

22

ruling here." (*Hernandez*, *supra*, 87 Cal.App.5th at p. 1220.) It is not clear from *Hernandez* whether the nonsignatories argued that the plaintiff's joint employment claim rendered it unfair to apply equitable estoppel.

Here, in contrast, the nonsignatory joint employers explained the unfairness of compelling arbitration: It is unfair for a signatory to an employment agreement to avoid arbitration by suing nonsignatories for claims that are based on the same facts and are inherently inseparable from arbitrable claims deriving from the agreement. Gonzalez obtained the benefit of employment from his agreement with Nowhere Santa Monica. That benefit came with a limitation—his claims against his employer could only be arbitrated. It would be unfair for him to enjoy that benefit while avoiding the limitation.

Although we do not accept *Hernandez*'s reasoning, we find it distinguishable for the additional reason that there, the plaintiff made a strategic choice to forego suing the signatory, whereas here, Gonzalez, sued the signatory and only dismissed it when it prevailed on a motion to compel arbitration.

## C. Conclusion

The trial court erred in denying appellants' motion to compel Gonzalez to arbitrate his claims against them under the doctrine of equitable estoppel. Given this holding, we need not reach appellants' argument that arbitration should have been ordered under agency principles.

**DISPOSITION**

The order denying appellants' motion to compel arbitration is reversed. Appellants are to receive their costs on appeal.

CERTIFIED FOR PUBLICATION


KLINE, J.[*]

We concur:


ROTHSCHILD, P. J.


BENDIX, J.

---

[*] Retired Justice of the Court of Appeal, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.