Filed 6/6/25  Club Speed v. Outlier K1S Equity Holdings CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CLUB SPEED, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> OUTLIER K1S EQUITY HOLDINGS, LLC, et al., <br><br> Defendants and Appellants. | G063352 <br><br> (Super. Ct. No. 30-2022-01241507) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Richard Y. Lee, Judge. Affirmed in part, reversed in part, and remanded with directions.

One and Taylor C. Foss; Buchalter and Robert M. Dato for Defendants and Appellants.

Rutan & Tucker, Richard K. Howell, Gerard M. Mooney, Mary Christine Brady, and Michael J. Malakouti for Plaintiff and Respondent.

Defendants Outlier K1S Equity Holdings, LLC (Outlier) and David Tedesco moved to compel to arbitration the four claims asserted against them by plaintiff Club Speed, LLC (Club Speed). Outlier and Tedesco sought to enforce the arbitration provision contained in an agreement of which they were not signatories. They argued they had standing to enforce that provision as the alleged agents of a signatory to the agreement and/or by application of the doctrine of equitable estoppel. For the first time on appeal, they also argue it is the province of the arbitrator and not the trial court to decide the arbitrability of claims against a nonsignatory.

Club Speed argued Outlier and Tedesco did not have standing under either theory to invoke the arbitration provision and the motion should otherwise be denied on the independent ground the third party exception under section 1281.2, subdivision (c) of the Code of Civil Procedure applied (all undesignated statutory references are to this code). The trial court rejected Outlier and Tedesco's agency and equitable estoppel arguments and denied the motion in its entirety without needing to decide the applicability of the third party exception.

We affirm in part, reverse in part, and remand with directions. For the reasons we explain, Club Speed was equitably estopped from avoiding the arbitration of its claims for intentional interference with contract with K1 and for unfair competition. We therefore reverse the order denying the motion to compel arbitration as to those claims and remand to the trial court with directions that it decide in the first instance whether the third party exception to mandatory arbitration applies. We otherwise affirm the order denying the motion as to Club Speed's claims for intentional interference with contract with K1 franchisees and trade libel.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

#### COMPLAINT

Club Speed filed a first amended complaint against K1 Speed, Inc. (K1); Fikable, LLC (Fikable); I&E Trading, LLC (I&E); David Danglard; Uli Perez; and Does 1 through 20. It later filed Doe amendments under section 474, identifying Doe 11 as Outlier and Doe 12 as Tedesco. The first amended complaint alleges, "Defendants, unless otherwise alleged, were acting as the alter egos or agents [of] each other, and were acting within the course and scope of such relationship with the knowledge, express or implied, of each other Defendant." It also alleges the following.

Club Speed licenses a software program tailored for family entertainment centers. In September 2018, K1 Speed licensed the software program pursuant to a "'Software License and Confidentiality Agreement'" (2018 Software Agreement) between K1 and Club Speed's predecessor and assignor. In June 2021, Club Speed and K1 renewed the 2018 Software Agreement under an agreement (2021 Software Agreement).

Under these agreements, K1 agreed to use the software program on an exclusive basis and not develop or design its own software. The 2021 Software Agreement's exclusivity provision provides: "It is understood and agreed that during the Term, Customer will not license, obtain or use any software or services that provide the same or similar functions to those of the Software from any third party. Further, Customer shall not create nor design, directly or indirectly, any software or services for use with its business which are substantially similar to the Services which are the subject of this Agreement."

In a separate agreement with Club Speed in June 2021 (Referral Agreement), K1 agreed to "'market and provide referrals to [Club Speed],'" and that such referrals "would be 'provided on an exclusive basis.'"

K1 breached these contracts by developing a competing software program (Fikable's software). Danglard and Perez contacted K1's franchisees, demanding them to cease using Club Speed's software and adopt Fikable's software.

Based on these factual allegations, Club Speed alleged seven causes of action: (1) breach of contract against K1 and Does 1 through 10 as to the 2018 and 2021 Software Agreements; (2) breach of contract against K1 and Does 1 through 10 as to the Referral Agreement; (3) intentional interference with contracts with K1 franchisees against all defendants; (4) intentional interference with contracts with K1 against Danglard, Fikable, I&E, and Does 11 through 20; (5) trade libel against all defendants; (6) unfair competition in violation of Business and Professions Code section 17200 against all defendants; and (7) declaratory relief against K1 and Does 1 through 10. Of these causes of action, only the third, fourth, fifth, and sixth causes of action are alleged against Outlier and Tedesco.

II.

MOTION TO COMPEL ARBITRATION

Outlier and Tedesco moved to compel arbitration of all claims alleged against them in the first amended complaint and stay any further

4

proceedings, based on an arbitration clause in the 2021 Software Agreement.[1] They argued the arbitrator, not the court, decides issues of arbitrability under the 2021 Software Agreement. Outlier and Tedesco also argued they, as nonsignatories to the 2021 Software Agreement, could invoke the arbitration clause, citing agency principles and the doctrine of equitable estoppel.

Section 13.1 of the 2021 Software Agreement contains the following arbitration clause: "Both parties will attempt to settle any claims or controversy through consultation and negotiation in good faith and a spirit of mutual cooperation. If those attempts fail, then in the event of a dispute between the parties which arises out of this Agreement, or any breach thereof, such dispute will, on the written request of one party delivered to the other party, be submitted to and settled by binding arbitration in the County of Orange, California in accordance with the commercial rules of the American Arbitration Association [(AAA)] then in effect." AAA's commercial rules specify an arbitrator's jurisdiction, including, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (AAA Rules, rule R-7(a) p. 13 <https://adr.org/sites/default/files/Commercial%20Rules.pdf> [as of May 20, 2025], archived at: <https://perma.cc/RTF5-3CTD>.) Section 12.2 of the 2021 Software Agreement provides California law governs.

---

[1] On the same day Outlier and Tedesco filed their motion to compel arbitration, Club Speed moved for leave to file a second amended complaint and later filed an ex parte application for leave to file such. Since our record does not indicate whether leave was granted to file the second amended complaint, we limit our analysis to the first amended complaint.

Club Speed opposed the motion to compel arbitration. It argued the court, not the arbitrator, determines issues of arbitrability. Club Speed asserted Outlier and Tedesco could not rely on agency and equitable estoppel to enforce the arbitration clause. It argued, even if arbitration were proper, only the fourth cause of action would be subject to arbitration. It posited the court should nevertheless deny arbitration under section 1281.2 given the possibility of inconsistent rulings involving other defendants.

In response to the motion, K1, Fikable, I&E, Danglard, and Perez agreed with Outlier and Tedesco's right to enforce the arbitration clause. Outlier and Tedesco filed a reply to the opposition.

In a minute order, the trial court denied the motion to compel arbitration, rejecting Outlier and Tedesco's assertions agency and equitable estoppel allowed them to invoke the arbitration clause. It concluded agency did not apply because "[n]one of [the] causes of action rest solely on the existence of an agency relationship between K1 and [Outlier and Tedesco]." As to equitable estoppel, the trial court found: "[Outlier and Tedesco] are not included in the breach of contract claims. Further, the causes of action that are alleged against [Outlier and Tedesco] do not rely on any terms or provisions of [Club Speed]'s contracts in support. This is not a case where [Club Speed] is trying to use the contracts as a sword against [Outlier and Tedesco] while at the same time avoiding the contracts['] favorable provisions. The fact that [Club Speed]'s contracts were allegedly impacted by [Outlier and Tedesco's] interference does not support a finding that the causes of action are intimately founded in and intertwined with any of the contract obligations."

Outlier and Tedesco timely appealed.

6

DISCUSSION

I.

GENERAL ARBITRATION PRINCIPLES AND STANDARD OF REVIEW

"'[A]rbitration is a matter of contract.'" (*AT&T Technologies, Inc. v. Communications Workers of America* (1986) 475 U.S. 643, 648.) "'The "'''... policy favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate.'" [Citation.] 'Although "[t]he law favors contracts for arbitration of disputes between parties" [citation], "'there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . .'" [Citations.]'" [Citation.] "Absent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived.'"'"'" (*Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 227.)

"Because arbitration is a matter of contract, generally '"one must be a party to an arbitration agreement to be bound by it or invoke it."'" (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352 (*DMS Services*).) Limited exceptions to this basic rule "allow[] nonsignatories to an agreement containing an arbitration clause to compel arbitration of, or be compelled to arbitrate, a dispute arising within the scope of that agreement." (*Id.* at p. 1353.) These exceptions fall under six theories: "'"(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary" [citations].'" (*Benaroya v. Willis* (2018) 23 Cal.App.5th 462, 469.) Two exceptions are relevant here: agency and the doctrine of equitable estoppel. "In such cases, where the question is whether a particular party is bound by the arbitration agreement, the liberal federal policy favoring arbitration agreements, which is 'best understood as

7

concerning "the scope of arbitrable issues," [citation],' is inapposite." (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 220 (*Goldman*).)

We review de novo the trial court's denial of the motion to compel arbitration, as the material facts are undisputed. (*Soltero v. Precise Distribution, Inc.* (2024) 102 Cal.App.5th 887, 892.) "Our de novo review includes the legal determination whether and to what extent nonsignatories to an arbitration agreement can enforce the arbitration clause." (*DMS Services*, *supra*, 205 Cal.App.4th at p. 1352.)

## II.

### ARBITRABILITY

Outlier and Tedesco argue the trial court should not have ruled on an issue of arbitrability—specifically, whether nonsignatories Outlier and Tedesco may enforce the arbitration clause in the 2021 Software Agreement. "It is axiomatic that arguments not raised in the trial court are forfeited on appeal." (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038.) Allowing a party to change its position and adopt a new and different theory on appeal "'would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.'" (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676.) "Although appellate courts have discretion to consider an issue in the first instance if it raises a question of law on undisputed facts, our Supreme Court has cautioned that such discretion should be exercised rarely and only in cases presenting an important legal issue." (*Wisner v. Dignity Health* (2022) 85 Cal.App.5th 35, 44–45.)

Outlier and Tedesco did not contend in the trial court the issue of arbitrability included whether nonsignatories to an arbitration agreement could enforce the agreement. They merely made a broad assertion that the

8

2021 Software Agreement incorporated AAA Rules, and the incorporation of AAA Rules indicates the arbitrator, rather than the court, must decide issues of arbitrability. While Club Speed discussed arbitrability and nonsignatories in its opposition in the trial court, Outlier and Tedesco did not in their reply. And, contrary to their arguments on appeal, they expressly asked the trial court to determine this issue: "the Court should allow Outlier . . . and Tedesco to invoke the arbitration provision of the 2021 Software Agreement based on theories of agency and estoppel." We therefore deem this argument forfeited.[2]

Even if we were to consider this issue, we would disagree with Outlier and Tedesco. "Although a nonsignatory can be compelled to arbitrate, California case law is clear that 'an arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement.'" (*Benaroya v. Willis*, *supra*, 23 Cal.App.5th at p. 469.) This principle applies too when a nonsignatory to an arbitration agreement moves to compel arbitration against a signatory.

## III.

## AGENCY

Agency is an "exception to the general rule that only a party to an arbitration agreement may enforce it. [Citation.] The exception applies, and a

---

[2] The parties do not address forfeiture regarding the issue of arbitrability and nonsignatories. But "the parties had the *opportunity* to brief forfeiture, a rule always implicated when an argument is raised for the first time on appeal. (See *People v. Alice* (2007) 41 Cal.4th 668, 679 ['The parties need only have been given an opportunity to brief the issue decided by the court, and the fact that a party does not address an issue, mode of analysis, or authority that is raised or *fairly included within the issues raised* does not implicate the protections of [Government Code] section 68081' (italics added)].)" (*People v. Graham*, *supra*, 102 Cal.App.5th at p. 798, fn. 6.)

9

defendant may enforce the arbitration agreement, 'when a plaintiff alleges a defendant acted as an agent of a party to an arbitration agreement.'" (*Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, 788 (*Garcia*).)

*Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446 (*Barsegian*) is instructive. The plaintiff sued an attorney, a law firm, and two other defendants. (*Id.* at p. 449.) The attorney and the law firm (collectively, Kessler defendants) moved to compel arbitration based on an arbitration agreement between the plaintiff and the law firm. (*Ibid.*) The two other defendants did not file a motion to compel arbitration, but they indicated, at the hearing on the Kessler defendants' motion, they would consent to arbitration. (*Id.* at p. 450.) On appeal, the Kessler defendants argued that, because the operative complaint alleged each defendant was an agent of the other, the allegation was a binding judicial admission, giving the other two defendants the right to enforce the arbitration agreement between the plaintiff and the law firm. (*Id.* at p. 448.)

The appellate court rejected the argument and affirmed the denial of the motion to compel arbitration. It first recognized the "sweeping implications" of the Kessler defendants' argument. (*Barsegian*, *supra*, 215 Cal.App.4th at p. 451.) It explained complaints against multiple defendants often contain boilerplate agency allegations, but "'such allegations may be necessary,' especially 'at the outset of a lawsuit, before discovery,'" such as to withstand a general demurrer. (*Ibid.*) The appellate court elaborated: "If the Kessler defendants' argument were sound, then in every multidefendant case in which the complaint contained such boilerplate allegations of mutual agency, as long as *one* defendant had entered into an arbitration agreement with the plaintiff, *every* defendant would be able to compel arbitration, regardless of how tenuous or nonexistent the connections among the

10

defendants might actually be." (*Ibid*.) The appellate court concluded the agency allegation was not a judicial admission (which is an admitted fact "effectively conceded *by both sides*"), because the Kessler defendants sought "to contest the truth of that allegation, either in court or before an arbitrator." (*Id.* at p. 452.) But the appellate court noted, under certain circumstances, "an allegation of agency can be sufficient to support a motion to compel arbitration even if the allegation is not treated as a judicial admission"—for example, when the claims "do not depend upon the boilerplate allegation that all defendants are each other's agents." (*Id.* at p. 453, fn. 3.)

The present case resembles *Barsegian*. Here, the operative complaint has a boilerplate allegation all defendants acted as each other's agents. It does not contain any factual allegations describing what Outlier and who Tedesco are and their relationship with the other defendants. There has been no judicial admission. (See *Garcia v. Expert Staffing West* (2021) 73 Cal.App.5th 408, 411 [agency exception did not apply because there was no judicial admission of agency allegations].) Similar to the Kessler defendants in *Barsegian*, Outlier and Tedesco deny they are agents of K1, yet they assert they are agents of K1 solely for purposes of the motion to compel arbitration. "'[I]t would be unfair . . .' to allow a party 'to invoke agency principles when it is to [that party's] advantage to do so, but to disavow those same principles when it is not.'" (*Barsegian*, *supra*, 215 Cal.App.4th at p. 453, quoting *Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 615.)

We recognize, under appropriate circumstances, an agency allegation alone may be enough to invoke the agency exception, even in the absence of a judicial admission. (*Barsegian*, *supra*, 215 Cal.App.4th at p. 453, fn. 3.) But those circumstances are not present here. The operative complaint

11

alleges four causes of action against Does 11 and 12 (Outlier and Tedesco, respectively) for intentional interference with contract, trade libel, and unfair competition. These causes of action do not necessarily depend on the boilerplate agency allegation. (See *ibid.*) As the trial court observed, Outlier and Tedesco could have intentionally interfered with Club Speed's contracts with K1 and K1 affiliates or made false statements about Club Speed to others, without having an agency relationship with K1.

Outlier and Tedesco suggest we should follow *Garcia, supra*, 11 Cal.App.5th 782. They represent *Garcia* found a boilerplate allegation of agency in the complaint is sufficient to invoke the agency exception. But their representation of *Garcia* is incorrect. *Garcia* did not involve a boilerplate allegation. The *Garcia* court explained: "[T]he operative complaint alleged workplace violations against Real Time and Pexco as joint employers, referred to both employers collectively as 'defendants' without any distinction, and alleged identical claims and conduct regarding unlawful and improper acts. This was not merely boilerplate language. As the alleged joint employers, Pexco and Real Time were agents of each other in their dealings with Garcia." (*Id.* at p. 788.) In contrast with *Garcia*, the operative complaint here has boilerplate language. The complaint also distinguishes Outlier and Tedesco from other defendants and alleges different claims against them.

Outlier and Tedesco contend Club Speed alleged they owned a stake in K1 and Tedesco was director of K1 and therefore they were agents who could enforce the arbitration clause. This argument lacks merit. Club Speed made no such allegations in the operative complaint. In their reply brief, Outlier and Tedesco attempt to show Tedesco was a director of K1—and thus an agent of K1—by citing an allegation in the operative complaint and an attached exhibit. The allegation is: "[C]ounsel for [Club Speed] wrote to K1

12

and its Board of Directors to address K1's breach of its agreements with [Club Speed]." And the exhibit is a letter, which is addressed to Tedesco and others, stating, "We write to you in your capacities as Directors of K1." But the allegation and exhibit do not show Tedesco *acted* in his capacity as a director of K1 as to the relevant causes of action in the operative complaint. Nor does the operative complaint name Tedesco as a defendant in his capacity as a director of K1.[3]

Therefore, we conclude the agency exception does not apply.

IV.

EQUITABLE ESTOPPEL

The doctrine of equitable estoppel is another exception to the rule that an arbitration agreement may only be enforced by a party to such agreement. "[T]he sine qua non for application of equitable estoppel as the basis for allowing a nonsignatory to enforce an arbitration clause is that the claims plaintiff asserts against the nonsignatory must be dependent upon, or

---

[3] Outlier and Tedesco also argue the trial court "ignored Club Speed's allegations" they "were 'agents' or 'alter egos' of K1 . . . and the other defendants in the breach of contract claim." (Boldface omitted.) They argue "[t]he breach of contract cause of action is a claim against [Outlier and Tedesco] derived under a theory of agency." But the breach of contract claim was not alleged by Club Speed against Outlier and Tedesco, and as discussed *ante*, there are no other allegations beyond the boilerplate agency allegation regarding such a relationship between K1 and Outlier and/or Tedesco.

Additionally, to the extent Outlier and Tedesco are relying on the alter ego exception to compel arbitration, we find such an argument forfeited. They present no substantive arguments on the alter ego exception. (See *Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418 [issues are forfeited "if they are not raised or supported by [substantive] argument or citation to authority"].)

13

founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause." (*Goldman, supra,* 173 Cal.App.4th at pp. 217–218.)

"Equitable estoppel generically "'precludes a party from asserting rights 'he otherwise would have had against another' when his own conduct renders assertion of those rights contrary to equity.""" (*Goldman, supra,* 173 Cal.App.4th at p. 220.) Thus, "if a plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement. In other words, a signatory to an agreement with an arbitration clause cannot "'have it both ways'"; the signatory 'cannot, on the one hand, seek to hold the [nonsignatory] liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a [nonsignatory].'" (*Ibid.*) "'The linchpin for equitable estoppel is equity—fairness.'" (*Ibid.*, brackets omitted.)

"Keeping this policy in mind helps define the limits of the rule. It is not enough that a complaint simply refers to a contract; the claims must be founded on the contract. [Citations.] Nor is it sufficient that a complaint alleges collusion between a signatory and nonsignatory defendant [citation], or that the controversy would not have occurred but for the existence of the contract, provided the contract is not the basis for the claims against the nonsignatory. [Citations.] In these situations, the policy rationale for equitable estoppel—'relying on an agreement for one purpose while disavowing the arbitration clause of the agreement'—does not exist."

14

(*Mattson Technology, Inc. v. Applied Materials, Inc.* (2023) 96 Cal.App.5th 1149, 1156.)[4]

Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262 (*Boucher*) is informative. The plaintiff sued a signatory and nonsignatory to plaintiff's employment agreement for, inter alia, breach of contract and unfair business practices in violation of Business and Professions Code section 17200 et seq. (*Id.* at p. 265.) The plaintiff also alleged two causes of action against only the nonsignatory—interference with contractual and prospective economic relations. (*Id.* at p. 266.) Both the signatory and nonsignatory moved to compel arbitration based on the arbitration clause in the employment agreement. (*Ibid.*) The appellate court held the plaintiff was "equitably estopped from avoiding arbitration of his causes of action against" the nonsignatory. (*Id.* at p. 273.) It found the "[p]laintiff's claims against [the nonsignatory] rely on, make reference to, and presume the existence of the . . . employment agreement with" the signatory. (*Id.* at p. 272.)[5]

[4] "We preliminarily observe that several courts have used the word 'rely' as shorthand for the standard that equitable estoppel applies where the plaintiff's claims against a nonsignatory must be 'dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause.' [Citation.] Although some courts have held that "'[c]laims that rely upon, make reference to, or are intertwined with claims under the subject contract are arbitrable'" [citation], we should be careful to avoid supplanting the standard with a shorthand derived from one of the standard's elements." (*Gonzalez v. Nowhere Beverly Hills LLC* (2024) 107 Cal.App.5th 111, 126 (*Gonzalez*).)

[5] To clarify, we recognize "'presum[ing] the existence of' an agreement is not a stand-alone principle, but merely an elaboration on the underlying principle, stated in *all* the cases: actual reliance on the terms of the agreement to impose liability on the nonsignatory." (*Goldman, supra*, 173 Cal.App.4th at p. 231.)

15

Here, Club Speed crafted its complaint to distinguish Outlier and Tedesco from the other defendants. Club Speed alleged four of the seven causes of action against Outlier and Tedesco. Of the four causes of action alleged against Outlier and Tedesco, we conclude only two—the fourth cause of action for intentional interference with contracts with K1 and the sixth cause action for unfair competition—depend on, are founded in, and are inextricably intertwined with the 2021 Software Agreement.

A. *Fourth and Sixth Causes of Action*

As in *Boucher*, the instant case involves causes of action for intentional interference with contracts and unfair competition. The fourth cause of action for intentional interference with contracts with K1, mentions the 2021 Software Agreement. It alleges, "[Club Speed] had valid contracts with K1 as set forth above, including the 2018 Software Agreement, 2021 Software Agreement, and the Referral Agreement." It alleges Outlier and Tedesco (along with Danglard, Fikable, I&E, and Does 11 through 20) disrupted Club Speed's contracts with K1 by: "causing K1 to be involved in the development of new software through Fikable which is substantially similar to and/or derivative of the Clubspeed Software, causing K1 to utilize such software, and causing K1 to require its franchisees to use the Fikable software rather than the Clubspeed Software, all in breach of K1's contracts with [Club Speed]." These allegations necessarily depend on the underlying contractual obligations of the 2021 Software Agreement, specifically its exclusivity provision, which prohibited K1 from "design[ing], directly or indirectly, any software or services for use with its business which are substantially similar to the Services which are the subject of this Agreement."

Club Speed contends the fourth cause of action is based on Outlier and Tedesco's independent conduct and their liability does not necessarily depend on the 2021 Software Agreement (for example, their liability could depend on the 2018 Software Agreement and or Referral Agreement). But, as Club Speed alleged in the operative complaint, the 2021 Software Agreement merely renewed the 2018 Software Agreement, and the fourth cause of action's allegations implicate the exclusivity provision of the 2021 Software Agreement. Moreover, given the allegations concern the disruption of K1's use of Club Speed's software, it is implausible the allegations are entirely rooted in the Referral Agreement, which required K1 to provide referrals for Club Speed on an exclusive basis.

Club Speed also argues Outlier and Tedesco's liability does not depend on breaching the 2021 Software Agreement, but may be based on disrupting Club Speed's relationship with K1. But, even if their liability does not depend on a breach, their alleged disruption of Club Speed's relationship with K1 is still founded in the 2021 Software Agreement. "[C]laims . . . cast in tort rather than contract does not avoid the arbitration clause." (*Boucher*, *supra*, 127 Cal.App.4th at p. 272.)

Furthermore, contrary to Club Speed's assertion, mentioning the underlying agreement in the complaint is not a prerequisite for applying equitable estoppel. (*Gonzalez*, *supra*, 107 Cal.App.5th at pp. 126–127; but see *Soltero v. Precise Distribution, Inc.*, *supra*, 102 Cal.App.5th at p. 893 [equitable estoppel did not apply where the complaint did not "mention or rely on any provision of" the underlying agreement].) "To apply equitable estoppel only when a complaint expressly references the agreement containing an arbitration clause would either limit application of the doctrine to contractual claims or invite tort and statutory claimants to craft

17

complaints to avoid any mention of the agreement." (*Gonzalez, supra*, 107 Cal.App.5th at p. 127.)

The sixth cause of action for unfair competition also depends on the 2021 Software Agreement. It alleges defendants, including Outlier and Tedesco, "engaged in a variety of conduct directed toward Plaintiff that constitutes unlawful, unfair, and fraudulent business practices in violation of . . . Business and Professions Code section 17200, including without limitation: (a) intentional breaches of contract; (b) interfering in [Club Speed]'s contracts; and (c) committing trade libel."[6]

Thus, Outlier and Tedesco are entitled to compel the fourth and sixth causes of action to arbitration, contingent on the outcome of the trial

---

[6] The sixth cause of action for unfair competition contains a request for injunctive relief and restitution. It is evident the injunctive relief is private, rather than public, in nature here. The dispute concerns the use of certain software at some businesses. Therefore, the "*Broughton-Cruz*" rule, which prohibits arbitration of unfair competition claims for public injunctive relief, does not apply. (*Clifford v. Quest Software Inc.* (2019) 38 Cal.App.5th 745, 751.)

court proceedings on remand regarding section 1281.2 (which we discuss *post*).[7]

*B. Third and Fifth Causes of Action*

The third cause of action for intentional interference with contracts with K1 franchisees and fifth cause of action for trade libel do not depend on the 2021 Software Agreement. (See *DMS Services, supra*, 205 Cal.App.4th at p. 1355 [plaintiff "does not rely on any provision in those agreements to support its claims"].) The third cause of action concerns Club Speed's contracts with K1 franchisees, not the 2021 Software Agreement with K1. The fifth cause of action alleges Outlier and Tedesco "made false statements about [Club Speed] with whom [Club Speed] is contracted."

---

[7] Club Speed also posits equitable estoppel does not apply, as the arbitration clause here is narrow, covering only "a dispute between the parties which arises out of this Agreement, or any breach thereof." It asserts cases where equitable estoppel applied contain broader arbitration clauses. (See, e.g., *Boucher, supra*, 127 Cal.App.4th at p. 266 ["'Any dispute or controversy arising under or in connection with this Agreement shall be submitted to binding arbitration'"].) It also argues no unfairness would result by refusing to compel arbitration, because the other signatory to the 2021 Software Agreement, K1, waived its right to arbitration. We disagree. The language in the arbitration clause is indistinguishable from the language in cases like *Boucher*, which presumes the dispute arises between the parties to an arbitration agreement. Even if the language here were narrower, it does not matter. As Club Speed recognizes, fairness is the cornerstone for equitable estoppel. Here, Club Speed is trying to ""'have it both ways.'"" (*Goldman, supra*, 173 Cal.App.4th at p. 220.) It is relying on the 2021 Software Agreement, which contains the arbitration clause, to assert certain claims against Outlier and Tedesco, while attempting to avoid arbitration because Outlier and Tedesco are nonsignatories to the 2021 Software Agreement. Therefore, inequity would result without applying equitable estoppel here.

## V.

### SECTION 1281.2, SUBDIVISION (C)

Club Speed contends we should affirm the trial court's order denying the motion to compel arbitration pursuant to section 1281.2, subdivision (c)'s third party exception. It asserts all of the defendants, besides K1, are third parties to the 2021 Software Agreement, and that a danger of inconsistent rulings exists if Club Speed is compelled to arbitrate claims against only Outlier and Tedesco.

Section 1281.2, subdivision (c) excepts mandatory arbitration where "[a] party to the arbitration agreement is also a party to a pending court action . . . with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." If these conditions are met, "section 1281.2(c) identifies four options from which the trial court may choose, including denial or stay of arbitration proceedings, among other things. [Citation.] These options are entrusted to the trial court's discretion." (*Williams v. Atria Las Posas* (2018) 24 Cal.App.5th 1048, 1054.) Accordingly, since the trial court did not reach this issue in the proceedings below, we remand to the trial court to exercise its discretion in the first instance as to Club Speed's claims for intentional inference with contracts with K1 and unfair competition. (*Id.* at p. 1055.)

## DISPOSITION

We reverse the trial court's order denying Outlier and Tedesco's motion to compel arbitration as to Club Speed's claims for intentional interference with contracts with K1 and unfair competition only. With respect to those two claims, we remand with directions the trial court (1) determine whether the conditions of section 1281.2, subdivision (c) are satisfied, and, (2) if it determines such conditions are satisfied, to exercise its discretion under section 1281.2 accordingly. The order denying the motion to compel arbitration is otherwise affirmed. Outlier and Tedesco to recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


SCOTT, J.